**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| COGNEX CORPORATION )<br><br>Plaintiff, )<br><br>v. )<br><br>JEAN CARON )<br><br>Defendant. ) | CIVIL ACTION NO.  04-12365 JLT |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION,**
**FORUM NON CONVENIENS, OR IMPROPER SERVICE**

Defendant Jean Caron ("Caron") is a French national who formerly was employed by

Cognex International, Inc. ("Cognex International"), a French-based, wholly-owned subsidiary

of plaintiff Cognex Corporation ("Plaintiff" or "Cognex").  On Caron's first day of employment

in March 1998, Cognex International required Caron to sign a "standard form" document,

written in English and entitled "Employee Invention, Non-Disclosure and Non-Competition

Agreement."  Cognex International knew that Caron's English language skills were lacking, and

simultaneously presented him with a French employment agreement entitled "Contrat de

Travail," misleading him into believing that the English language document was no more than

his French employment agreement translated into English, the "official company language."  The

Contrat de Travail contains no post-employment restriction on Caron's right to work, while the

English language document contains a post-employment covenant that does not comply with

French law.

Caron resigned from his employment with Cognex International, effective September 19, 2003, and subsequently began employment with an alleged Cognex competitor located in Belgium, Euresys S.A.  On August 2, 2004, nearly three months after Cognex confirmed that Caron was working for Euresys S.A., Cognex filed suit against Caron in the Massachusetts Superior Court alleging claims for breach of contract (Count I) and breach of implied covenants of loyalty, good faith, and fair dealing (Count II), all arising out of the English language document.  At the same time Cognex filed its Complaint, it petitioned for and received an *ex parte* Temporary Restraining Order from the Superior Court (which since has been extended) purporting to enjoin "Defendant, and all persons in active concert or participating with him who receive notice of [the] order" from, in sum, employment with Euresys, misusing confidential information obtained from Cognex, or violating the Agreement "in any manner."

On November 8, 2004, Caron removed the case to this Court on the basis of alienage diversity jurisdiction and now moves to dismiss the two-count Complaint in its entirety, on the grounds of lack personal jurisdiction, or, in the alternative, on grounds of forum *non conveniens* or for insufficiency of service of process.  Pursuant to Local Rule 7.1(B)(1), Caron submits this supporting memorandum of law and his accompanying affidavit, which are incorporated into his Motion.

## FACTUAL ALLEGATIONS[1]

Caron is a French citizen who was hired in March 1998 and employed by Cognex International, Inc. ("Cognex International"), a wholly owned subsidiary of Cognex in a suburb of Paris, France.  Complaint ¶¶ 7, 9; *see* Affidavit of Jean Caron and certified English translation

---

[1]  Caron, as he must, accepts Plaintiff's properly documented evidentiary proffers as true for the purpose of this Motion.  *Daynard* v. *Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 45 (1st Cir. 2002), *cert. denied sub nom, Scruggs* v. *Daynard*, 537 U.S. 1029 (2002); *Foster-Miller, Inc.* v. *Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995).  Caron reserves the right to dispute any and all such facts in the event that any part of this case is not dismissed at the outset.

("Caron Aff.") ¶¶ 2, 8.[2]  On March 16, 1998, Caron's first day of employment, his direct

supervisor presented him with several documents for his signature, including an employment

agreement written in French (the "Contrat de Travail" or "Employment Agreement"), and a

document written in English (a language that Caron does not speak or read fluently) and

captioned "Employee Invention, Non-Disclosure and Non-Competition Agreement" (the

"English Agreement").[3]  Copies of the Contrat de Travail (and certified English translation) and

the English Agreement are provided as Exhibits A and B to the Affidavit of Jean Caron.

Caron was provided with a copy of the Contrat de Travail several months before he was

asked to sign it.  Caron Aff. ¶¶ 7, 9.  By its terms, the Employment Contract is governed by

French law, including the national Syntec Collective Bargaining Agreement.  Caron Aff. ¶¶ 10,

11.  The Contrat de Travail contains covenants concerning the ownership of developments and

the confidentiality of Cognex International's proprietary information, and a covenant not to

engage in certain competitive activities *during* Caron's employment with Cognex International.

Caron Aff. ¶ 10; Caron Aff. Exhibit A.

The English Agreement, on the other hand, is a "standard form" agreement that was not

given to Caron in advance.  Affidavit of Didier Lacroix ¶ 13, attached as Exhibit A to Plaintiff's

Memorandum in Support of Application for Preliminary Injunction ("Lacroix Aff."); Caron Aff.

¶ 9.  Caron understood it to be an English translation of the Contrat de Travail and that it was

required because English is Cognex's "official company language."  Caron Aff. ¶ 13.  Caron was

---

[2]  In considering Caron's motion to dismiss, the court is not limited to the allegations in the Complaint.  *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 690 (1st Cir. 1993) (citing *American Express Int'l, Inc. v. Mendez-Capellan*, 889 F.2d 1175, 1178 (1st Cir. 1989)).  The court may draw the facts from the pleadings and the parties' supplementary filings, including affidavits.  *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

[3]  Caron uses the term "English Agreement" only for ease of reference.  He does not admit that he entered into any legally enforceable agreement with Cognex by or as a result of signing the document.

never provided with a translation of the document in French, despite the fact that Cognex International was well aware that his English language skills were lacking.[4]  Caron Aff. ¶¶ 9, 13, 24.  The English Agreement purports to include covenants concerning the ownership of developments and to maintain the confidentiality of Cognex's proprietary information, and – unlike the Contrat de Travail – a covenant not to engage in certain specific *post-employment* activities in competition with Cognex.  Complaint ¶¶ 10-12; Caron Aff. ¶¶ 3, 9, 16.  The English Agreement includes other clauses not contained in the Contrat de Travail (and therefore not known to or understood by Caron), including clauses stating that "[t]he validity, interpretation and performance of this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts…" and that the parties "voluntarily submit themselves to the jurisdiction of the Courts of the Commonwealth of Massachusetts with respect to any action to remedy any breach or to otherwise enforce the terms and conditions of this Agreement."  Complaint ¶ 3; Caron Aff. ¶¶ 16, 33; Caron Aff. Exhibit B.  The document was presented to Caron for his signature without any opportunity for negotiation.  Caron Aff. ¶¶ 9, 13.  Caron also had no opportunity to and did not retain counsel to represent him in conjunction with signing the English Agreement.  Caron Aff. ¶ 16.

All administrative and labor-related matters concerning Caron's employment were handled by the Company in France according to French laws.  Caron Aff. ¶¶ 23, 25, 26.  Cognex alleges that early in his five and one half (5 ½ ) year tenure with the company, Caron twice traveled to Massachusetts, at the direction of his employer, for a total of eight (8) days.

---

[4]   The Complaint artfully alleges that when Caron became employed by Cognex, he entered into the English Agreement, and "also executed an employment agreement containing simultaneous French and English translations of certain terms of his employment with Cognex, including, without limitation, his duty of non-disclosure of proprietary information." Complaint ¶ 9.  Plaintiff admits, however, that Caron was not provided a translated copy of the English Agreement.  Lacroix Aff. ¶ 13.  Indeed, it appears that the English Agreement was presented to Caron as the "simultaneous" English translation of his Contrat de Travail.  *Id*.; Caron Aff. ¶¶ 9, 13.

Complaint ¶ 13.  Caron's work otherwise was exclusively in Europe.  Caron Aff. ¶ 20.  Cognex alleges that "Caron regularly received a high degree of supervision and support from Cognex executive and management level personnel in Massachusetts."  Complaint ¶ 9; *but see* Caron Aff. ¶¶ 21, 22.

Caron was promoted in April 2001, without being asked to sign new employment agreements.  Caron Aff. ¶ 18.  He was asked to sign an amendment to the Contrat de Travail in December 2002 to bring his Employment Agreement into conformity with recent changes to French labor agreements and laws.  Caron Aff. ¶ 19.

Caron resigned his employment with Cognex on or about June 16, 2003, effective September 19, 2003.  Complaint ¶ 16; Caron Aff. ¶ 25.  On September 19, 2003, Cognex International provided Caron with a Certificat du Travail stating that he left the company that day "free of all duties and obligations."  Caron Aff. ¶ 28.  Caron subsequently went to work for one of Cognex's alleged competitors in Belgium.  Complaint ¶¶ 17-18.  The company gave Caron no indication prior to initiating this lawsuit that it believed his ability to accept other employment was in any way restricted.  Caron Aff. ¶ 29.  Cognex now alleges that, as a result of this employment, Caron "has violated and continues to violate the express and implied covenants" in the English Agreement.  Complaint ¶¶ 20, 22, 27; *but see* Caron Aff. ¶ 32 (denying the allegations).

<u>**ARGUMENT**</u>

The plaintiff bears the burden of demonstrating personal jurisdiction over the defendant. *Daynard* v. *Ness, Motley, Loadholt, Richardson & Poole, P.A.*, *supra*, 290 F.3d at 50-51.  Where a court lacks personal jurisdiction over the defendant, it cannot enter a valid judgment against him.  *Donatelli* v. *National Hockey League*, 893 F.2d 459, 463 (1st Cir., 1990), *quoting Hanson* v. *Denckla*, 357 U.S. 235, 251 (1958) (stating that restrictions on personal jurisdiction "are more

than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States.").

Cognex argues that Caron is subject to personal jurisdiction in Massachusetts by virtue of a "consent to jurisdiction" provision in the English Agreement, as Cognex apparently recognizes that Caron's contacts with Massachusetts are too insubstantial to confer personal jurisdiction over him on that basis. The "consent to jurisdiction" provision is unenforceable, however, as an unconscionable and void contract of adhesion. Moreover, even if the Massachusetts courts had personal jurisdiction over Caron, this Court should decline to exercise that jurisdiction because the balance of public and private factors in the case strongly favors litigation in a foreign court. Finally, if the Court does not dismiss the case for these reasons, it should dismiss the case for insufficiency of service of process.

1.    **Caron's Purported Consent to the Jurisdiction of the Massachusetts Courts is Unconscionable and Invalid.**

Cognex claims that this Court has personal jurisdiction over Caron because, while employed by a subsidiary of the company in Europe, he signed an English-language, "standard form" document purporting to submit him to the jurisdiction of the Massachusetts courts. The clause on which Cognex relies reads:

> The validity, interpretation and performance of this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts excluding such state's choice of law rules. The parties hereto voluntarily submit themselves to the jurisdiction of the Courts of the Commonwealth of Massachusetts with respect to any action to remedy any breach or to otherwise enforce the terms and conditions of this Agreement.

Complaint Exhibit A, ¶ 12.

Consent to jurisdiction clauses are enforced when reached in an arms-length negotiation "unaffected by fraud, undue influence, or overweening bargaining power" by experienced and sophisticated businessmen, but will not be given effect where enforcement would be

unreasonable under the circumstances. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9-10 (1972); *KKW Enterprises* v. *Gloria Jean's Gourmet Coffees Franchising Corp*., 184 F.3d 42, 52 (1st Cir. 1999). A number of factors affect whether enforcement of a consent to jurisdiction clause is reasonable under the circumstances. Factors militating against enforcement of such a clause include an imbalance of bargaining power in the negotiation of the agreement containing the clause; inconvenience of the contractual forum to one or both of the parties; and the relationship of the contractual forum to the negotiation, execution, and performance of the agreement containing the clause. *See M/S Bremen*, 407 U.S. at 12-18 (considering the sophistication and bargaining power of parties, remoteness of forum to locus of dispute; and inconvenience of contractual forum); *Lambert v. Kysar*, 983 F.2d 1110, 1119-21 (1st Cir. 1993) (considering the sophistication and bargaining power of parties; convenience of forum; and relation of contractual forum to negotiation, execution, and performance of contract in evaluating enforcement of forum selection clause); *D'Antuono v. CCH Computax Systems, Inc.*, 570 F. Supp. 708, 712 (D.R.I. 1983) (Selya, J.) (evaluating enforcement of forum selection clause according to the identity of law governing construction of contract; place of execution of contract; place where transactions were to be performed; availability of remedies in selected forum; public policy of initial forum state; location of parties, convenience of witness and accessibility of evidence; relative bargaining power of parties and circumstances of negotiations; presence of fraud, undue influence or other extenuating circumstances; and conduct of the parties).

Here, enforcement of the consent to jurisdiction clause would be unreasonable. The "standard form" English Agreement is a contract of adhesion and the consent to jurisdiction clause is unconscionable. As noted above, one of the central factors a court should consider is an

imbalance of power between the parties.  Cognex did not deal with Caron on a level playing field.  Instead, the company admits that it did not provide Caron with a French translation of the English Agreement and even now, Cognex attempts to create the misimpression that the English Agreement is a translated version of the French Contrat de Travail, while in fact it purports to impose significant additional obligations on Caron that are not even mentioned in the Contrat de Travail and are contrary to the requirements of French law.  *See* n. 4, *supra* and pp. 9, *infra*.

Cognex knew that Caron's English language skills were lacking, yet it required him to sign a document in a foreign language without allowing him to come to an understanding of its contents.  Caron was not represented by counsel and had no familiarity with the laws of the United States generally or with Massachusetts law in particular.  Cognex did not explain the significance of the English Agreement and did not provide Caron with the opportunity to consult with counsel or seek assistance interpreting its terms.  Indeed, it appears that Cognex fully expected to enjoy an unfair advantage against Caron.[5]  Cognex, for its part, has a substantial business presence in both Massachusetts and France, and presumably had the English Agreement drafted or vetted by lawyers with expertise in Massachusetts law.  Such a disparity in the business sophistication of the parties is relevant to the question of whether the negotiations were infected by an imbalance in bargaining power.  *See M/S Bremen*, 407 U.S. at 12-13.  *See also*

---

[5]  Cognex's history of litigating the English Agreement also illustrates the degree to which the company has used its bargaining power to unfairly take advantage of foreign-based employees of its subsidiaries.  In its Memorandum in Support of Application for Preliminary Injunction, at 5 n.4, Cognex cites three other restrictive covenant cases brought against foreign employees in the Massachusetts Superior Court by the same counsel.  The docket in each case suggests that the foreign employees never appeared.  In *Cognex Corporation* v. *Bibel* (Middlesex Docket No. 99-01739), Cognex obtained an *ex parte* TRO against the German defendants and a final default judgment in the amount of $140,662.75, with interest of $10,077.62, costs of $9,096.63 and attorneys' fees of $33,875.00.  In *Cognex Corporation* v. *Chiesa* (Middlesex Docket No. 02-00422), Cognex did not pursue the case after it obtained an *ex parte* TRO against the Italian defendant.  Finally, in *Cognex Corporation* v. *Rossi* (Middlesex Docket No. 02-03010), Cognex obtained an *ex parte* TRO against the Italian defendant and, after a hearing, the Superior Court adopted Cognex's proposed Findings of Fact and Conclusions of Law, which included a finding that the defendant had caused Cognex $120,000 in damages.  Cognex appears to have abandoned the case without seeking entry of a final judgment.  This pattern reveals that Cognex consistently has required its non-U.S. employees to sign an English version of its adhesive standard form document and subsequently sought enforcement in a forum to which these foreign-based former employees have no reasonable access.

*Chase Commercial Corp. v. Owen*, 32 Mass.App.Ct. 248, 253-54 (1992) (refusing to enforce contract of adhesion when drafter had reason to know signer would not have consented had he known contract contained challenged term); *Kroeger v. Stop & Shop Cos., Inc.*, 13 Mass. App. Ct. 310, 318 (1982) (noting that employment agreements often have aspects of contracts of adhesion); *Kirby v. Miami Sys. Corp.*, 1999 WL 788442 (Mass.App.Div. 1999) (deeming forum selection clause void because employment agreement containing clause was contract of adhesion); *Cheney v. Automatic Sprinkler Corp. of America*, 377 Mass. 141, 147 (1979) (noting that agreements between employees and employers often not arrived at by bargaining between equals).  Finally, Caron was not given an opportunity to negotiate any of the terms of the company's "standard form" English Agreement; he was presented the document on a take-it-or-leave-it basis.  The fact that a consent to jurisdiction provision is contained in a boilerplate contract, which is presented to a party on a take-it-or-leave-it basis demonstrates an imbalance of bargaining power and militates against enforcement of the provision.  *First National Monetary Corp. v. Chesney*, 514 F. Supp. 649, 656 (E.D.Mich. 1980).

Further, enforcement of the clause will cause Caron to suffer substantial hardship.  Courts have recognized that hardship to the parties that would be caused by enforcement of contractual consents to jurisdiction are to be considered in evaluating the validity of such clauses.  *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280-81 (9th  Cir. 1984) (ruling that forum selection clause should not be enforced where trial in contractual forum would be so inconvenient as to effectively deprive party of day in court); *Matthiessen v. National Trailer Convoy, Inc.*, 294 F. Supp. 1132 (D.Minn. 1968) (refusing to enforce forum selection clause because distance between witnesses and evidence in Minneapolis and trial forum in Georgia may unreasonably deny party his day in court).  In this case, the inconvenience Caron would suffer if

forced to litigate a dispute with Cognex in this court is extreme. Caron continues to reside in Europe and would be required to travel thousands of miles to litigate this case in a forum with which he has no connection. The witnesses to the relevant facts of this case, including Caron's former supervisors at Cognex's facility in France and agents of his current employer, would also have to make this journey if they were to testify. Moreover, compulsory process is not available to require the attendance of any of these witnesses at trial. The hardship Caron would face in litigating a case in this forum is exacerbated by the fact that he is a lone individual in a controversy with a large, multi-national corporation with substantial economic resources. Such a disparity in financial strength between parties has a bearing on the convenience of the selected forum. *First National Monetary Corp.*, 514 F. Supp. at 655.

Finally, Caron's putative consent to jurisdiction should be disregarded because Massachusetts has only an attenuated connection to the relationship between Cognex and Caron. As noted above, Caron is a French citizen. He was hired in France by a subsidiary of Cognex operating a facility in France. Caron signed the English Agreement in France, lived in France and worked in Europe throughout his employment with Cognex. His employment relationship was administered locally according to the laws of France. Caron terminated his relationship with Cognex in France. Caron now is employed in Belgium by a Belgian company. Despite these facts and in reliance on an English-language boilerplate contract, Cognex seeks to apply a foreign body of law to an essentially local dispute properly adjudicated in Europe. Given this factual background, Cognex's effort to impose Massachusetts law on its post-employment relationship with Caron should be rejected. *See Lambert*, 983 F.2d at 1121.

-10-

**2.**     **Caron's Contacts With Massachusetts Are Insufficient To Confer Personal Jurisdiction Over Him.**

Sitting in diversity, a federal District Court has personal jurisdiction over a defendant if he is within the reach of the Massachusetts Long-Arm Statute and the exercise of personal jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Daynard* v. *Ness, Motley, Loadholt, Richardson & Poole, P.A.*, *supra*, 290 F.3d at 51-52.  The Court may sidestep the statutory inquiry and proceed directly to the constitutional analysis, however, because the Supreme Judicial Court of Massachusetts has interpreted the Long-Arm Statute "as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States."  *Id*. at 52; *Automatic Sprinkler Corp. of America* v. *Seneca Foods Corp*., 361 Mass. 441, 443 (1972); *accord Tatro* v. *Manor Care, Inc*., 416 Mass. 763, 771 (1994). Caron's contacts with the Commonwealth are not sufficient to satisfy the requirements of due process.

A court has personal jurisdiction over a defendant only if the defendant has had either "continuous and systematic" contacts with the forum state or has had sufficient "minimum contacts" with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe v. Washington*, 326 U.S. 310, 316-17 (1945).  The minimum contacts evaluation is made according to relatedness, purposeful availment, and reasonableness. *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*., 142 F.3d 26, 35 (1st Cir. 1998).  In analyzing relatedness, courts consider the nexus between the plaintiff's claim and the defendant's activities in the forum.  *United Elec., Radio, and Mach. Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992); *see also Tatro*, *supra*, 416 Mass. at 770 ("Whether certain events 'arise out of' a nonresident defendant's actions . . . is comparable or analogous to whether certain actions can be

said to be the legal, or proximate cause of injuries suffered by a plaintiff") (quoting *Pizarro* v. *Hoteles Concorde Int'l, C.A.*, 907 F.2d 1256 (1st Cir. 1990)).  The purposeful availment factor is assessed by looking to whether a defendant's contacts with the forum are of such a nature as to put him on notice of the possibility of being sued for his activities there.  *See Turpin v. Mori Seiki Co., Ltd.*, 56 F.Supp.2d 121, 126 (D.Mass. 1999) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  Finally, the Supreme Court has enumerated five "gestalt factors" that bear on the reasonableness of asserting personal jurisdiction over a foreign party: (i) the defendant's burden of appearing; (ii) the forum state's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief; (iv) the judicial system's interest in obtaining the most effective resolution of the controversy; and (v) the common interests of all sovereigns in promoting substantive social policies.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).  More specifically, in a contract case, the court will evaluate the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether the defendant purposefully established minimum contacts.  *Daynard* v. *Ness, Motley, Loadholt, Richardson & Poole, P.A.*, *supra*, 290 F.3d at 52, *citing Burger King Corp*. v. *Rudzewicz*, 471 U.S. 462, 479 (1985).

All factors here demand that the Court dismiss the Complaint for lack of personal jurisdiction over Caron.  The isolated and minor contacts Cognex alleges Caron had with Massachusetts (*i.e.*, attending two training sessions at his employer's instruction) are insufficient to show "continuous and systematic" contacts.  The trips Caron took to Massachusetts for training are not the cause of the injury for which Cognex seeks redress (*i.e.*, Caron's post-employment work for one of Cognex's alleged competitors).  Further, Caron's alleged contacts

with the Commonwealth were undertaken at Cognex's direction and for the purpose of advancing Cognex's business interests. More importantly, however, Caron had no notice or understanding that he could be called upon to defend his actions in a Massachusetts court. Caron Aff. ¶¶ 16, 29, 33. Cognex knew that Caron's English language skills were lacking, yet it presented him with the "standard form" English Agreement, which imposes obligations beyond those contained in the Contrat de Travail written in Caron's native French language. Cognex did not explain the significance of the English Agreement and did not provide Caron with the opportunity to consult with counsel. Indeed, it appears that Cognex fully expects to enjoy an unfair advantage against Caron. Cognex's actions are the epitome of unfair play and offend traditional notions of justice.

The post-employment restriction in the English Agreement also is contrary to French labor law. According to French labor law, as stated by the French Supreme Court, a non-compete clause must comply with the following principles to be enforceable: (1) the non-compete clause must be indispensable to the protection of the employer's legitimate interests; (2) the non-compete clause must not unduly restrict the ability of the employee concerned to work in his area of specialty; and (3) a non-compete clause is valid only if it requires the employer to financially compensate the employee to respect his obligations. Cass. Civ. Soc., July 10, 2002, Bull. Civ. V, Decision No. 02724 (2002). A copy of this decision and a certified translation are provided at Tab A. Caron received no additional remuneration for Cognex's claim of a right to restrict his right to work as required under French law. Caron Aff. ¶¶ 17, 29.

Looking to the parties' interests in evaluating reasonableness, Caron will be subjected to an overwhelming hardship if he is forced to defend his right to work in Europe for a Belgian company as the result of a document arising out of his work in Europe for Cognex's subsidiary

in France. Cognex, on the other hand, maintains a substantial business operation in France and cannot claim inconvenience by being required to pursue its claims in France. Considerations of fairness and efficiency demand that this case be adjudicated in a court on the same continent where the employment relationship was centered, where the conduct that gave rise to Cognex's alleged injuries occurred, where any potential judgment would be enforced, and where any witnesses likely to be called at a trial of this matter reside. Finally, the United States and Massachusetts in particular have no interest is resolving an employment dispute in Europe, particularly where the provision Cognex seeks to enforce is contrary to French law.

### 3.   This Matter Should Be Dismissed On Grounds of Forum Non Conveniens.

Even if this Court were to find that it has personal jurisdiction over Caron, the Court should decline to exercise that jurisdiction and dismiss this case on grounds of forum *non conveniens* because a balancing of public and private considerations strongly favors litigation of this dispute in the alternative available forum of France. A motion to dismiss for forum *non conveniens* should be granted where (1) there exists an adequate alternative forum, and (2) considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum. *Iragorri v. International Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000) (citing *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 423-24 (1st Cir. 1991)). In this case, France provides an alternative available forum where a trial of Cognex's claims against Caron would be much more efficient and reasonable.

France is an adequate alternative forum for the adjudication of Cognex's claims against Caron. Courts generally deem this first requirement of the forum *non conveniens* standard to be satisfied if the defendant demonstrates that the alternative forum addresses the types of claims that the plaintiff has brought and that the defendant is amenable to service of process there. *Iragorri*, 203 F.3d at 12 (citing *Piper Aircraft Co. v Reyno*, 454 U.S. 235, 254 (1981)). There are

-14-

no legal obstacles to the adjudication of Cognex's breach of contact or breach of implied

covenants claims against Caron in the French courts.[6]  Courts have repeatedly recognized the

adequacy of France as a forum for the litigation of a wide variety of disputes.  *See, e.g., Dattner

v. Conagra Foods, Inc.,* 2004 WL 350159 (2d Cir. 2004) (France adequate forum for various tort

claims); *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602 (10th Cir. 1998) (France adequate forum

for wrongful death dispute); *Miles v. Paribas*, 65 F.3d 175 (9th Cir. 1995) (France adequate

forum for claims of fraud, breach of contract, misrepresentation, and breach of fiduciary duty).

The fact that Cognex's non-competition claims are unsupportable under French law, *see* p. 13,

*infra*, does not make the French courts any less adequate as an alternative forum.  The adequacy

of an alternative forum does not rest on whether that forum offers the full panoply of remedies

available in the plaintiff's chosen forum.  *Gschwind*, 161 F.3d at 607 (alternative forum adequate

unless forum's remedy "so clearly inadequate … that it is no remedy at all") (quoting *Piper*, 454

U.S. at 254-55); *Thomson Info. Servs., Inc. v. British Telecomms., PLC*, 940 F. Supp. 20, 23 (D.

Mass. 1996), citing *Howe v. Goldcorp Investments, Ltd.*, 946 F.2d 944, 947 (1st Cir. 1991).  In

fact, Massachusetts courts have dismissed cases involving non-competition claims on grounds of

forum *non conveniens* in favor of adjudication in California, for instance, where such claims are

also disfavored as contrary to public policy.  *See Aware, Inc. v. Ramirez-Mireles*, 2001 WL

755822 (Mass. Super. 2001) (dismissing non-competition case for forum *non conveniens* for

litigation in California, despite acknowledging that such claims are disfavored there); *E Ink*

---

[6]  The "Governing Law" clause of the English Agreement on which Cognex relies (Complaint Exhibit A, ¶ 12) does not require that this case be tried in Massachusetts.  The provision in question states only that Massachusetts law shall govern the dispute.  It does not purport to deprive any other court of jurisdiction over the dispute or designate the Massachusetts courts as the exclusive forum for disputes arising under the agreement.  Therefore, even if the jurisdictional language in the agreement were enforceable, the parties would retain their rights to litigate this dispute in courts outside Massachusetts.

*Corp. v. Drzaic*, Suffolk Superior Court C.A. No. 01-1617 BLS (Order dated Apr. 19, 2001)

(staying action in non-competition case in favor of litigation of claims in California).

In analyzing the second part of the forum *non conveniens* standard – whether

convenience and judicial efficiency favor litigating a claim in an alternative forum – courts

balance a compendium of factors relevant to the private and public interests implicated by the

dismissal of the case. *Iragorri*, 203 F.3d at 12 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501,

508-09 (1947); *Mercier*, 935 F.2d at 423-24). In this case, the balance of public and private

interests strongly favors litigation of Cognex's claims against Caron in France.

The private interest factors almost uniformly favor litigation of this dispute in the French

courts. Considerations relevant to litigants' private interests include ease of access to sources of

proof, availability of compulsory process to procure the attendance of unwilling witnesses, the

cost of compelling unwilling witnesses to appear, and any other factors that make trial of a case

easier, more expedient or less expensive. *Iragorri*, 203 F.3d at 12; *Thompson Info. Servs., Inc.*,

940 F. Supp. at 23 (citing *Gulf Oil Corp.*, 330 U.S. at 508). All of the witnesses likely to have

information pertinent to this dispute, including Caron, the Cognex employees who negotiated

with, hired and supervised him during his work for Cognex, and the employees of his current

employer involved in his hiring and work for that company all reside in or near France. Courts

have recognized a strong interest favoring litigation of a dispute in the jurisdiction where the

majority of witnesses reside. *See, e.g., Thomson Info. Servs.*, 940 F. Supp. at 24 (fact that

overwhelming majority of witnesses reside in UK favors litigation in that forum). The fact that

many of the likely witnesses, including the Defendant, are not native speakers of English and

would require translators to give testimony in an American court also favors litigation of this

dispute abroad. *Mediterranean Golf, Inc. v. Hirsh*, 783 F. Supp. 835, 846 (D.N.J. 1991) (citing

*Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 639 (3d Cir. 1989)).  Even if translators were readily available and not unduly expensive, the prospect of translated testimony favors litigation in the jurisdiction where the witnesses reside because it may be more difficult for a jury to effectively evaluate credibility of witnesses whose testimony is received through an intermediary.  *Iragorri*, 203 F.3d at 16.  The fact that there may be non-party witnesses, such as Caron's current supervisors and employees of the Cognex clients that Caron allegedly solicited, who may not be subject to the compulsory process of an American court also favors litigation abroad.  *See Thomson Info. Servs.*, 940 F. Supp. at 24 (citing *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 10 (1st Cir. 1985).  The substantial hardship to Caron (discussed above) of having to litigate Cognex's claims in Massachusetts also favors dismissal of this action.  *Iragorri*, 203 F.3d at 17 (financial hardship relevant to balance of private factors).  The only factor arguably favoring litigation of this dispute in Massachusetts is the fact that the parent company of Caron's employer in France, has its corporate headquarters in the Commonwealth.  The fact that Cognex also has a significant corporate presence in Europe (*i.e.*, the entity by which Caron was actually employed) leaves the balance of private interest factors tipped decidedly in favor of litigating this dispute in the French courts.

Analysis of the public interests also favors dismissal in favor of litigation in France.  Factors relevant to the public interest in the dismissal on forum *non conveniens* grounds include the administrative difficulties of courts in dealing with congested dockets that can be caused by cases not being filed at the dispute's place of origin, the burden of jury duty on members of a community with no connection to the litigation, the local interest in having localized controversies decided at home, the appropriateness of having cases tried in a forum familiar with the governing law, and other factors bearing on where the trial will best serve the convenience of

the parties and the ends of justice. *Iragorri*, 203 F.3d at 12 (citing *Koster v. (American)*

*Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947)); *Gschwind*, 161 F.3d at 606 (citing *Gulf*

*Oil Corp.*, 330 U.S. at 508-09). These public interest factors also decisively favor trial of this

dispute in a French forum. France has a much greater interest than Massachusetts in localized

resolution of the dispute between Cognex and Caron. French public policy imposes strict

requirements on the enforcement of non-competition agreements against French employees.

Massachusetts has no cognizable interest in the adjudication of any dispute arising under the

English Agreement, which was signed, performed, and allegedly breached entirely outside of the

Commonwealth. *See Aware, Inc. v. Ramirez-Mireles*, 2001 WL 755822 (Mass. Super. 2001)

(dismissing suit for breach of non-compete against resident of California who signed and

performed agreement primarily in California). Caron is a French citizen who has spent very little

time in Massachusetts or in the United States generally.[7] Caron's current employment is based

in Belgium, where he works for a Belgian company. Further, French law determines the

enforceability of the choice of law and consent to jurisdiction provisions of the English

Agreement because the document purports to govern an employment relationship in France and

was signed by a French citizen living in France. The primary issue to be resolved – the validity

of the contract – is a matter of French law, and should be decided by a French court. *See*

*Gschwind*, 161 F.3d at 609; *Aware, Inc.*, 2001 WL 755822 at *2 (fact that enforceability of non-

comp is a matter of California law demands litigation of dispute in California court).

---

[7]  Cognex attempts to play up Caron's contacts with Massachusetts, pointing to two trips Caron took to the Commonwealth for training purposes and occasional telephone contact with employees in the company's Massachusetts facilities. This level of contact is insufficient to tip the balance in favor of exercising jurisdiction over this dispute. *See Aware, Inc. v. Ramirez-Mireles*, 2001 WL 755822 (Mass. Super. 2001) (dismissing non-competition case for forum *non conveniens* where defendant spent 2-3 days in Massachusetts in about 17 months of employment and had regular communications with employees in Massachusetts).

**4.      <u>This Matter Should Be Dismissed For Insufficiency of Service of Process</u>.**

Finally, in the event that the Court does not dismiss the case for lack of personal jurisdiction or on grounds of forum *non conveniens*, the case should be dismissed for insufficiency of service of process.  The United States and Belgium are parties to the Hague Convention of 1965 on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), a multilateral treaty on service of process.  *See* 20 U.S.T. 1361 and Appendix following Fed. R. Civ. 4.  The most common method of service in Belgium requires service to the designated "Central Authority" to effect service of documents from other signatory states.  *See* Articles 3 and 5 of the Hague Convention.  By the very terms of the certificate of service indicating delivery of the documents in this case to Caron, service was "in accordance with Article IV of the Protocole attached to the Agreement between member States of the European Community" (to which the United States is not a party), as well as "in accordance with the provisions of the Agreement between Belgium and the Grand Duchy of Luxembourg" (to which the United States also is not a party).  *See* Tab B.  On its very face, the certificate of service indicates that service was not made in accordance with the formalities of the Hague Convention and the case should be dismissed for insufficiency of service of process.  *See* Hague Convention, Article 1; *In re Lupron Mktg. & Sales Practices Litig.*, 245 F. Supp. 2d 280, 278 288 (D. Mass. 2003).

## <u>CONCLUSION</u>

WHEREFORE, Defendant Jean Caron respectfully requests that this Court dismiss the

two-count Complaint in its entirety, for lack of jurisdiction over his person.  In the alternative,

Jean Caron requests that this Court dismiss the action on grounds of forum *non conveniens* or for

insufficiency of service of process.

<div style="margin-left:40%">

Respectfully submitted,
JEAN CARON
By his Attorney(s),


_____/s/   Sally L. Adams_____
Sally L. Adams (BBO # 629688)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:     (617) 946-4800
Telecopier:     (617) 946-4801

</div>

DATED:  November 16, 2004

## **Certificate of Service**

I hereby certify that a true copy of the above document was filed electronically with the Court and served by hand delivery on November 16, 2004 upon the following:

Jennifer A. Yelen, Esq.
Perkins Smith & Cohen LLP
One Beacon Street, 30th Floor
Boston, MA  02108


_____
/s/  Sally L. Adams