UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COGNEX CORPORATION,       ) | |
|       Plaintiff,           ) | |
|                    ) | |
|     v.                                   ) | CIVIL ACTION NO. 04 12365 JLT |
|                    ) | |
| JEAN CARON,                      ) | |
|       Defendant.          ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447(c)**

Introduction

Pursuant to the requirements of 28 U.S.C. § 1447(c) and Local Rule 7.1(B)(1) of the United States District Court for the District of Massachusetts, Plaintiff, Cognex Corporation, submits the within Memorandum of Law in Support of its Motion to Remand the within action to the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts, Middlesex County ["Middlesex County Superior Court"].

Statement of Relevant Facts

Plaintiff commenced an action in the Middlesex County Superior Court on August 2, 2004, seeking injunctive relief to enforce restrictive covenants against Defendant in connection with his prior employment by Plaintiff. In particular, Plaintiff seeks to enforce the terms of a written employment agreement signed by Defendant on March 16, 1998 (and attached to Plaintiff's Complaint as Exhibit A), in which Defendant agreed, inter alia, not to accept

employment with a direct competitor for a period of two (2) years from the date of termination of his employment.

Paragraph four of Defendant's Employment Agreement states, in pertinent part:

4.   Covenant Not to Compete

4.1   The Employee hereby covenants and agrees that during his or her employment with the Company and for the period of time defined below following termination of his or her employment with the Company, whether voluntary or involuntary and whether with or without cause, he or she will not, without the prior written consent of the President of the Company, directly or indirectly, for himself or herself, or on behalf of any other person or entity:

4.1.1   Through the use of the Proprietary Information or any trade secret of the Company or by any other means, solicit any business relating to any business then conducted by the Company from any customer or client of the Company who was such at any time during the twelve (12) month period immediately preceding such termination, or was actively solicited to become such during said twelve (12) month period, all as verified by the books and records of the Company; or

4.1.2   Cause or encourage anyone or any entity, through the use of the Proprietary Information or any trade secret of the Company or by any other means, to solicit any such business from any of said customers, clients or prospective customers and clients; or

4.1.3   Disclose to anyone or any entity the names or addresses of any of said customers and clients or prospective customers and clients, nor cause any such disclosure, unless such information shall be in the public domain through no fault of the Employee; or

4.1.4   Request or cause any of said customers, clients or prospective customers and clients to cancel or terminate or refuse to enter into any business relationship with the Company; or

4.1.5   Call upon any persons who are employees or consultants of the Company for the purpose of diverting or taking them away from their employment or consultancy with the company; or

4.1.6   Engage as an owner, stockholder, manager, agent, consultant, director or employee in any business competitive with or similar to any business which has

been conducted by the Company at any time during the term of his or her employment with the Company; provided that the provisions of this subsection 4.1.6 shall not be deemed breached by the aggregate ownership by the Employee, as the result of open market purchases, of one (1%) percent or less of the capital stock of a corporation, the stock of which is regularly traded on a stock exchange or in the over-the-counter market. The Employee agrees that the granting of stock options to the Employee by the Company ("Employee's Stock Options") and any pre-tax gains realized as a result of the exercise of any portion of such options plus any gains realized as of result of the sale of any shares acquired through the exercise of any portion of such options shall be further consideration to the Employee for the Employee's compliance with the terms of this Subsection 4.1.6. Companies listed in Exhibit 1 are known to be competitors of Cognex as of the date of this Agreement; the list set forth in Exhibit 1 is not comprehensive, and, therefore, the absence of any particular company from this list does not indicate that the particular company is not a competitor of Cognex.

4.2   The duration of the obligations of the Employee under this Section 4 ("Non-Compete Period") shall commence upon the first day of his or her employment by the Company and shall continue for a period of two years following termination of his or her employment with the Company, provided, however, that if the term of such employment was less than two years, the obligations of the Employee under this Section 4 shall continue for the greater of six months or such term; and shall extend throughout the United States of America and any foreign country in which the Company engaged in business during the term of his or her employment with the Company or in which business was actively contemplated by the Company at the time of the termination of such employment. In the event of any violation of any provision of this Agreement, the Non-Compete Period shall be extended for a period of time equal to the period of time which the Employee is in violation.

The relief requested by Plaintiff in its Complaint is largely equitable in nature. Although Plaintiff makes reference to "economic harm" it has suffered as a consequence of Defendant's employment by a competitor, it, significantly, identifies no specific amount of economic damages and no specific facts one could use to quantify such damages at this juncture.

Based upon its likelihood of success on the merits, Plaintiff obtained a Temporary Restraining Order against Defendant, restraining and enjoining him from, inter alia, employment

by a company in direct competition with Plaintiff.  The Temporary Restraining Order was extended by the Middlesex County Superior Court on August 11, 2004, and again on October 25, 2004, and continues to remain in full force and effect as of the date of this Memorandum.

As Defendant is a resident of Belgium, and as Defendant had misrepresented his then current address, Plaintiff was not able to effect service upon Defendant until October 8, 2004.  Service was made in hand in Belgium by a duly authorized process server.

On November 8, 2004, Defendant, through his counsel, filed a Notice of Removal Pursuant to 28 U.S.C. § 1441(a) with this Court and a Notice of Filing of Notice of Removal with the Middlesex County Superior Court.  In its Notice of Removal, Defendant states that jurisdiction is appropriate in this Court on the basis of diversity jurisdiction, as he claims the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

Argument

I.    This Action Must Be Remanded As The Federal Courts Lack Subject Matter Jurisdiction.

    A.    Standard of Review of Removal Action.

An action commenced in a State Court may be removed to Federal Court under certain specific circumstances:

> "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."

28 U.S.C. § 1441(a).  "[R]emoval is proper only where the federal court would have had subject matter jurisdiction over the matter if the plaintiff had filed the action in federal court originally." Roche v. American Red Cross, 680 F.Supp. 449, 450 (D.Mass. 1988).

"'The burden of establishing federal jurisdiction rests with the party seeking removal.'" Id., quoting Miller v. Grgurich, 763 F.2d 372, 373 (9th Cir. 1985).

In Roche, in 1988, the District Court noted that the "trend of decisions is that removal statutes will be strictly construed and that doubts should be resolved against removal." Supra at 451.  The rationale for such strict construction was two-fold:  (1) "plaintiff's choice of forum should not be denied lightly" and (2) "major inefficiencies result where a district court's decision that removal was proper is ultimately overturned on appeal after a full trial on the merits." Id. FLEXcon Co., Inc. v. Ramirez Commercial Arts, Inc., 190 F.Supp. 2d 185, 187 (D.Mass. 2002) (because it is a statutory rather than a constitutional provision, removal under Section 1441 should be narrowly construed to ensure due regard for the rightful independence of state government); Mill-Bern Associates, Inc. v. Dallas Semiconductor Corporation, 69 F.Supp. 2d 240, 242 (D.Mass. 1999) (removal statutes are to be strictly construed); Santiago v. Barre Nat., Inc., 795 F.Supp. 508, 511 (D.Mass. 1992) (removal statutes are to be strictly construed in order to further principles of judicial economy and comity); American Home Assurance Company v. Insular Underwriters Corp., 494 F.2d 317, 319 (1st Cir. 1974) (removal in diversity cases, to the prejudice of state court jurisdiction, is a privilege to be strictly construed, in consideration of the principles of judicial economy and comity).

Following removal, a plaintiff may move the court to remand the matter back to State Court, pursuant to 28 U.S.C. § 1447(c), which provides, in relevant part, "[if] at any time before

final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Where there is no subject matter jurisdiction,[1] the District Court has no discretion and must remand the action to the State Court. Mills v. Harmon Law Offices, P.C., et al., 344 F.3d 42, 45 (1st Cir. 2003), citing Maine Association of Interdependent Neighborhoods v. Commissioner, Maine Department of Human Services, 876 F.2d 1051, 1054 (1st Cir. 1989).

      B.      Subject Matter Jurisdiction is Lacking as the Amount in Controversy Does Not Exceed $75,000.00.

Defendant has removed this action to the District Court, alleging subject matter jurisdiction by virtue of diversity jurisdiction under 28 U.S.C. § 1332(a)(2). Defendant, therefore, has the burden of demonstrating that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . (2) citizens of a State and citizens of subjects of a foreign state . . . ." 28 U.S.C. § 1332(a); American Buildings Company v. Varicon, Inc., 616 F.Supp. 641, 643 (D.Mass. 1985) (burden is on removing party to establish its right to a federal forum). While Plaintiff concedes that Defendant is a subject of a foreign state (as a resident of Belgium), it is clear that Defendant cannot meet his burden of proving that the matter in controversy in this action exceeds $75,000.00.

This Court should "look to plaintiff's pleadings to establish the amount in controversy." FLEXcon, supra at 186 (defendant's compulsory counterclaim does not govern the amount in controversy); Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995) (a

---

[1] Indeed, it should be noted that there is a presumption that the District Court "lacks jurisdiction in a particular case until it has been shown that jurisdiction over the subject matter exists." Martin v. Wyzanski, 262 F.Supp. 925, 926-927 (D.Mass. 1967). This doctrine has evolved from the principle that the United States District Courts are courts of limited jurisdiction, empowered to hear only such cases as entrusted to them by jurisdictional grant by the Congress. Id.

court decides the amount in controversy from the face of the complaint, unless it appears that the amount stated in the complaint is not claimed in good faith); Ferris v. General Dynamics Corp., 645 F.Supp. 1354, 1361 (D.R.I. 1986) ("courts have typically looked at things from the plaintiff's standpoint, eyeing the benefit expected to accrue to the plaintiff as the best yardstick for measurement of the amount in controversy"); Chin v. Holiday Cruises II, Inc., 1992 U.S. Dist. LEXIS 22537, *8 (D.Mass. 1992) (the amount in controversy is generally gauged from the plaintiff's point of view). In this case, Plaintiff did not allege a particular amount in controversy in its Complaint; rather, it alleged only that it would suffer unspecified "economic harm" as a consequence of Defendant's continued violation of his covenant not to compete.[2] Similarly, in the Civil Action Cover Sheet filed in the Middlesex County Superior Court, Plaintiff alleged only that it anticipated its damages "exceeding $30,000.00." On the face of Plaintiff's pleadings, the amount in controversy cannot be held to exceed $75,000.00.

Defendant argues that the amount in controversy should be established by reference to the alleged value of his present employment.[3] See Notice of Removal, ¶ 2. This argument is without legal support.

---

[2] See paragraphs 24 and 29 of Plaintiff's Complaint.
[3] There is no evidence whatsoever as to Defendant's present salary which would support Defendant's bald allegation in his Notice of Removal that "Caron's salary over the next two years (the period of time for which Cognex seeks to enjoin his employment) exceeds $75,000."

In actions where the plaintiff seeks primarily equitable relief, as here, the courts have attempted to employ "some method . . . to translate the goal of litigation into an approximate monetary value" for the purposes of determining the amount in controversy. Ferris, supra at 1361. "In such situations, the 'amount in controversy' has historically been calculated by assessing the value to the plaintiffs of conducting their affairs free from the restriction or imposition which they seek to restrain." Id. at 1362; Tiffany & Co. v. The Boston Club, Inc., 231 F.Supp. 836, 840 (D.Mass. 1964) (value of amount in controversy in trademark case determined by value of business to be protected and the rights of property which the complainant sought to have recognized and enforced through injunctive relief); Textron, Inc. v. American Woolen Co., 122 F.Supp. 305, 309 (D.Mass. 1954) (value of the matter in dispute is the value of the plaintiff's property to be protected); Mass. State Pharmaceutical Ass'n v. Fed. Prescription Serv., 431 F.2d 130, 132 (8th Cir. 1970) (the amount in controversy is tested by the value of the suit's intended benefit to the plaintiff).

Applying this analysis to the Plaintiff's claims in this action, it is clear that the amount in controversy cannot be reached. There is no evidence before this Court, whether in the pleadings or otherwise, which could result in a conclusion that the amount in controversy exceeds $75,000, exclusive of interest and costs. The value of this litigation to Plaintiff is to prevent Defendant from using skills and information (including customer lists and preferences) obtained while employed by Plaintiff for a direct competitor, and, ultimately, to prevent such competitor from using this information to divert business from Plaintiff. Such loss of business has not been determined to date, let alone quantified. This is particularly significant given that the "'critical time for determining the existence *vel non* of the amount in controversy is the inception of the

suit, i.e., the time of filing.'" Zurich American Insurance Company v. Integrand Assurance Company Ultrapure Systems, 178 F.Supp. 2d 47, 48 (D.P.R. 2001), quoting Corrada Betances v. Sea Land Service, Inc., 248 F.3d 40, 45 (1st Cir. 2001); American Buildings Company, supra (whether an action should be remanded to the state court must be resolved by reference to the complaint at the time the petition for removal was filed).

Where, as here, the potential economic losses are entirely speculative, the Defendant cannot meet his burden of demonstrating that the value to Plaintiff of a successful outcome in the litigation exceeds the jurisdictional minimum. Radlo v. Rhone-Poulenc, S.A., 241 F.Supp. 2d 61, 64 (D.Mass. 2002). Cf., Young v. Leventhal, 2004 U.S. App. LEXIS 22625, *4-5 (1st Cir. October 28, 2004) (motion to dismiss for lack of subject matter jurisdiction denied where amount in controversy is met by including certain identifiable costs to plaintiff as part of value to plaintiff of litigation).

To be certain, the value to Plaintiff of this litigation is not the purported amount of Defendant's salary. It is immaterial to Plaintiff whether Defendant makes $75,000 or nothing from his employment with a direct competitor -- it is the losses, most particularly the harm to its goodwill, which would flow from such employment which Plaintiff seeks to protect against.

Given the narrow interpretation required of removal statutes, the particular facts of this case mitigate in favor of remand to the Middlesex County Superior Court.[4] See Roche, 680

---

[4] To the extent that Defendant argues that it would be futile to remand this matter to State Court in light of his claim that Massachusetts courts lack personal jurisdiction over him, this argument must fail. The express language of § 1447(c) gives no discretion to dismiss rather than remand an action where subject matter jurisdiction does not exist. Russell's Garden Center, Inc., et al. v. Nextel Communications of the Mid-Atlantic, Inc., et al., 296 F.Supp. 2d 13, 16 (D.Mass. 2003), citing Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 89 (1991). With reference to this express language, the Massachusetts District Court has held, unequivocally, that "no futility exception exists." Russell's Garden Center, Inc., supra at 18.

F.Supp. at 455 (where there is a close question of federal jurisdiction, motion to remand should be granted to avoid the risk of wasted resources that would result if a higher court decided on appeal that removal was improper after trial on the merits).

III.  <u>Defendant Should be Assessed Costs in Connection with his Removal of this Action</u>.

Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal." There was no reasonable basis upon which Defendant could have sought removal of this action from the Middlesex County Superior Court -- there was, and still is, no legal or factual support for a claim that the Federal Court has subject matter jurisdiction, in the form of diversity jurisdiction, over this action. Plaintiff should therefore be awarded its actual costs, including attorneys' fees, incurred as a result of the removal.

Conclusion

Certain principles are generally invoked with respect to jurisdictional issues: (1) "the borders of federal jurisdiction are to be watchfully policed," <u>Radlo</u>, <u>supra</u>; and (2) "removal statutes are to be strictly construed," <u>Id.</u> In consideration of those standards, Defendant has not, and cannot, meet his burden of demonstrating that the Federal Courts have subject matter jurisdiction over this action, as the amount in controversy does not exceed $75,000.00. This action must therefore be remanded to the Middlesex County Superior Court, and costs, including attorneys' fees, should be awarded to Plaintiff.

Plaintiff,
COGNEX CORPORATION,
By its attorneys,

/s/ James E. O'Connell, Jr.
James E. O'Connell, Jr., BBO# 376475
Jennifer A. Yelen, BBO# 565205
PERKINS SMITH & COHEN LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 854-4000

Dated:  November 17, 2004
13271-11 MemoRemandII.doc