**MICV2004-03040**

FILED
CLERK'S OFFICE

NOV 18 P 1:13

U.S. DISTRICT COURT
DISTRICT OF MASS.

**COGNEX CORP**

**v.**

**JEAN CARON**

**\*\*\*\*REMOVED TO US DISTRICT COURT\*\*\*\***

**Commonwealth of Massachusetts**
**SUPERIOR COURT DEPARTMENT**
**THE TRIAL COURT**
**CAMBRIDGE**

MICV2004-03040

I, Karen O'Connor, Deputy Assistant Clerk of the Superior Court, within and for said County of Middlesex, do certify that the annexed papers are true copies made by photographic process of pleadings entered in the Superior Court on the 2nd of August, in the year of our Lord, Two Thousand Four



In testimony whereof, I hereunto set my hand and affix the seal of said Superior Court, at Cambridge, in said County, this 17th of Nov., in the year of our Lord, Two Thousand Four

Karen A. O'Connor
Deputy Assistant Clerk

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. **04-03040-D**

|  |  |
|---|---|
| COGNEX CORPORATION | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JEAN CARON | ) |
| Defendant. | ) |



## NOTICE OF FILING OF NOTICE OF REMOVAL OF ACTION

| To: | Civil Clerk of the Court<br>Middlesex Superior Court<br>Superior Court House<br>40 Thorndike Street<br>Cambridge, MA 02141 | James E. O'Connell, Esq.<br>Jennifer A. Yelen, Esq.<br>Perkins, Smith & Cohen LLP<br>One Beacon Street<br>Boston, MA  02108 |
|---|---|---|

PLEASE TAKE NOTICE that the defendant Jean Caron filed a Notice of

Removal Pursuant to 28 U.S.C. § 1441(b) of the above-captioned matter in the United

States District Court for the District of Massachusetts on November 8, 2004.  A certified

copy of the Notice of Removal of Pursuant to 28 U.S.C. § 1441(b) is attached hereto as

Exhibit A.

Please take further notice that upon filing of the Notice of Removal of Pursuant to

28 U.S.C. § 1441(b) with the Clerk of the Middlesex County Superior Court of the

BO1 15668196

Commonwealth of Massachusetts, in accordance with 28 U.S.C. §1446(d), the Superior

Court shall proceed no further herein, unless and until the case is remanded.

Respectfully submitted,
JEAN CARON
By his Attorney(s),

SEYFARTH SHAW LLP
Sally L. Adams (BBO# 629688)
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801

DATED:  November 8, 2004

### Certificate of Service

I hereby certify that a true copy of the above
document was served upon the attorney of record
for each party by hand on November 8, 2004.

Sally L. Adams

BO1 15668196



Writer's direct phone
(617) 946-4916
Writer's e-mail
sadams@seyfarth.com

FILED
IN CLERK'S OFFICE

2004 NOV -8 P 12: 28

U.S. DISTRICT COURT
DISTRICT OF MASS.

World Trade Center East
Two Seaport Lane
Suite 300
Boston, MA 02210-2028

617-946-4800
fax 617-946-4801
www.seyfarth.com



November 8, 2004

COPY

BRUSSELS
WASHINGTON, D.C.
SAN FRANCISCO
SACRAMENTO
NEW YORK
LOS ANGELES
HOUSTON
CHICAGO
BOSTON
ATLANTA

By Hand

Clerk for Civil Business
United States District Court
District of Massachusetts
One Courthouse Way
Boston, MA  02210

> Re:    Cognex Corp. v. Caron

Dear Sir or Madam:

On behalf of Defendant Jean Caron, I enclose the following documents for filing:

1.    Notice of Removal (original and copy) pursuant to 28 U.S.C. § 1441(a);

2.    Civil Cover Sheet;

3.    Case Category Sheet;

4.    Check in the amount of $159.00 for the removal filing fee ($150.00) and certification fee ($9.00);

5.    Copy of the Notice of Filing of Notice of Removal that is being served on Plaintiff's counsel and filed with the Superior Court; and

6.    Notice of Appearance.



November 8, 2004<br/>Page 2

Kindly, date stamp the enclosed copy of this letter and face page of the pleadings and return the same to our messenger. Thank you for your assistance in this matter.

Sincerely yours,

SEYFARTH SHAW LLP

*Sally L. Adams ( jmd )*

Sally L. Adams

:sp
Enclosures
cc:  Mielle Nichols, Esq.
     James E. O'Connell, Jr., Esq.

FILED
IN CLERKS OFFICE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

2004 NOV -8

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| COGNEX CORPORATION | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) CIVIL ACTION NO. |
|  | ) |
| JEAN CARON | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

NOV 0 8 2004

Edward J. Sullivan
CLERK

## NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §1441(a)

Defendant Jean Caron ("Caron") hereby removes to the United States District

Court for the District of Massachusetts (the "District Court") the above-captioned matter,

which is now pending in the Superior Court of the Commonwealth of Massachusetts in

the county of Middlesex as Civil Action No. 04-3040.

As grounds for this removal, Caron states the following:

1.     This is a civil action over which the District Court has original jurisdiction

under 28 U.S.C. § 1332(a)(2), and which Caron is entitled to remove to the District Court

pursuant to 28 U.S.C. §§ 1441(a).

2.     This action is removed on the basis of diversity jurisdiction in that the

matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the

action is a between a citizen of Massachusetts and a citizen of a foreign state.  Although

Caron denies that he has engaged in any unlawful or actionable conduct, Plaintiff alleges

that it is entitled to injunctive relief and money damages because it has suffered and

continues to suffer damage to its business and to its good will.  Caron's salary from his

current position over the next two years (the period of time for which Cognex seeks to enjoin his employment) exceeds $75,000. Moreover, Cognex seeks money damages from Caron for loss of business and good will which it has characterized in its pleadings as "palpable" and "inestimable." Thus, more than $75,000, inclusive of interest and costs, is in controversy in this case.

3.     Plaintiff alleges that it is a Massachusetts corporation with its corporate headquarters and principal place of business in Massachusetts. Complaint ¶ 1. Cognex is a citizen of the Commonwealth of Massachusetts.

4.     Caron is a citizen of the nation of France and currently resides in Belgium. *See also* Complaint ¶ 2. For the purpose of 28 U.S.C. §§ 1332 and 1441(b), Caron is not a citizen of the Commonwealth of Massachusetts.

5.     Removal of this action is timely under 28 U.S.C. § 1446(b). Although Caron has yet to be properly served under the terms of the Hague Convention of 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention")[1], a copy of papers related to this matter were delivered to him on October 13, 2004, by a bailiff in Plainevaux, Belgium.

---

[1]     Pursuant to Article 2 of the Hague Convention, each signatory state (which include the United States, France and Belgium), shall designate a "Central Authority" both to receive requests originating within its jurisdiction and to effect service of documents from other signatory states. Article 3 of the Hague Convention requires that documents be presented to the Central Authority within the state where the documents originate to be forwarded to the Central Authority of the recipient state. Pursuant to Articles 5 and 6 of the Hague Convention, a receiving Central Authority serves the document or arranges to have it served by an appropriate agency, then provides a certificate of service.

7.    Based on the foregoing, Defendant Jean Caron hereby removes this action

to the United States District Court for the District of Massachusetts.

                            Respectfully submitted,
                            JEAN CARON
                            By his Attorney(s),


                            _____
                            Sally L. Adams (BBO# 629688)
                            Seyfarth Shaw LLP
                            World Trade Center East
                            Two Seaport Lane, Suite 300
                            Boston, MA 02210-2028
                            Telephone:    (617) 946-4800
                            Telecopier:    (617) 946-4801


DATED:  November 8, 2004

| **Certificate of Service** |
| --- |
| I hereby certify that a true copy of the above document was served upon the attorney of record for each party by hand on November ⟨ , 2004. |
| _____ |
| Sally L. Adams |

BO1 12668177

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**COPY**

## I. (a) PLAINTIFFS
Cognex Corporation

## DEFENDANTS
Jean Caron

2004 NOV -8  P 12: 28

**(b)** County of Residence of First Listed Plaintiff **Middlesex**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED. DISTRICT OF MASS.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
James E.O'Connell Jr. and Jennifer A. Yelen
Perkins Smith & Cohen LLP
One Beacon Street
Boston, MA 02108
617-854-4000; Fax 617-854-4040

Attorneys (If Known)
Sally L. Adams
Seyfarth Shaw LLC
Two Seaport Lane, Suite 300
Boston, MA 02210
Phone 617-946-4800; Fax 617-946-4801

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☒ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | ☐ 385 Property Damage | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| | | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | | ☐ 870 Taxes (U.S. Plaintiff | Under Equal Access to |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | ☐ 790 Other Labor Litigation | or Defendant) | Justice |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☒ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | 26 USC 7609 | ☒ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN  (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 (a)(2), where plaintiff seeks to enforce an employment contract with Defendant, a citizen of France, residing in Belgium.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):  JUDGE _____    DOCKET NUMBER _____

DATE
November 8, 2004

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**COPY**
FILED
IN CLERKS OFFICE

1. Title of case (name of first party on each side only) Cognex Corporation v. Jean Caron

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

2004 NOV -8 P 12: 28

U.S. DISTRICT COURT
DISTRICT OF MASS.

- [ ] I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.
- [ ] II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. *Also complete AO 120 or AO 121 for patent, trademark or copyright cases
- [x] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.
- [ ] IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.
- [ ] V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]    NO [x]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]    NO [x]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]    NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]    NO [x]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1 (d)).
   YES [x]    NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division [x]    Central Division [ ]    Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]    NO [x]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME Sally L. Adams

ADDRESS Seyfarth Shaw LLC, Two Seaport Lane, Suite 300, Boston, MA 02210

TELEPHONE NO. 617-946-4800

FILED
CLERKS OFFICE

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. **04-03040-D**
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| COGNEX CORPORATION )<br><br>Plaintiff, )<br><br>v. )<br><br>JEAN CARON )<br><br>Defendant. ) | COPY |

## NOTICE OF FILING OF NOTICE OF REMOVAL OF ACTION

| To: | Civil Clerk of the Court<br>Middlesex Superior Court<br>Superior Court House<br>40 Thorndike Street<br>Cambridge, MA 02141 | James E. O'Connell, Esq.<br>Jennifer A. Yelen, Esq.<br>Perkins, Smith & Cohen LLP<br>One Beacon Street<br>Boston, MA 02108 |
|---|---|---|

PLEASE TAKE NOTICE that the defendant Jean Caron filed a Notice of

Removal Pursuant to 28 U.S.C. § 1441(b) of the above-captioned matter in the United

States District Court for the District of Massachusetts on November 8, 2004. A certified

copy of the Notice of Removal of Pursuant to 28 U.S.C. § 1441(b) is attached hereto as

Exhibit A.

Please take further notice that upon filing of the Notice of Removal of Pursuant to

28 U.S.C. § 1441(b) with the Clerk of the Middlesex County Superior Court of the

Commonwealth of Massachusetts, in accordance with 28 U.S.C. §1446(d), the Superior

Court shall proceed no further herein, unless and until the case is remanded.

Respectfully submitted,
JEAN CARON
By his Attorney(s),

SEYFARTH SHAW LLP
Sally L. Adams (BBO# 629688)
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:   (617) 946-4800
Telecopier:   (617) 946-4801

DATED:  November 8, 2004

---

**Certificate of Service**

I hereby certify that a true copy of the above
document was served upon the attorney of record
for each party by hand on November 8, 2004.

Sally L. Adams

---

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COGNEX CORPORATION )
)
Plaintiff, )
)
v. )    CIVIL ACTION NO.
)
JEAN CARON )
)
Defendant. )
)

## NOTICE OF APPEARANCE

Please enter the appearance of Sally L. Adams on behalf of Defendant Jean Caron

in this matter, and direct all future correspondence to my attention.

Respectfully submitted,
JEAN CARON
By his Attorney(s),

SEYFARTH SHAW LLP
Sally L. Adams (BBO# 629688)
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:   (617) 946-4801

DATED:  November 8, 2004

---

### Certificate of Service

I hereby certify that a true copy of the above
document was served upon the attorney of record
for each party by hand on November 8, 2004.

Sally L. Adams

---

BO1 15671978

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
THE SUPERIOR COURT DEPARTMENT



MIDDLESEX, ss.                                    CIVIL ACTION NO. 04-3010

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX
AUG 0 2 2004
CLERK

COGNEX CORPORATION,
        Plaintiff,

    v.                                           **COMPLAINT**

                                  )
JEAN CARON,                       )
        Defendant.                )
                                  )

08/02/04 13:46#0000 9953 CLERK C
                        CIVIL      240.00
                        SURCHARGE   15.00
                        SECC        20.00
                        043040 #
                        SUBTTL     275.00
                        TOTAL     275.00
                        CHECK      275.00

## INTRODUCTION

The Plaintiff, Cognex Corporation, brings this action against the Defendant, Jean Caron, requesting equitable injunctive relief to enforce the terms and conditions of an express written employment contract with the Defendant and seeking to recover damages for breach of contract and breach of the implied covenant of good faith and fair dealing.

## PARTIES

1.      Plaintiff, Cognex Corporation, is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, with corporate headquarters and a principal place of business at One Vision Drive, Natick, Middlesex County, Massachusetts [hereinafter, "Cognex"].

08/02/04 16:05#0000 8868 CLERK E
                        TRO        90.00
                        043040 #
                        SUBTTL     90.00
                        TOTAL      90.00
                        CHECK      90.00

2.      Upon information and belief, Jean Caron ["Caron"] is a citizen of France residing at A67, 10/26 bd Herold, 92000 Nanterre, France.  Upon information and belief, Caron is in the active employment of Euresys S.A, a corporation organized under the laws of Belgium and located at Liege Science Park, Avenue du Pre-Aily, 14, B-4031 Angleur, Belgium [hereinafter, "Euresys"].

## JURISDICTION

3.      This Court has personal and subject matter jurisdiction pursuant to an express valid agreement between Cognex and Caron providing that the "validity, interpretation and performance of" the agreement "shall be governed by and construed in accordance with the laws

of the Commonwealth of Massachusetts excluding said state's choice of law rules." A true and accurate copy of this standard form Cognex agreement, the Employee Invention, Non-Disclosure and Non-Competition Agreement, is appended hereto as Exhibit "A" and is incorporated herein by reference (the "Caron Employee Agreement"). Pursuant to the agreement between the parties, Caron specifically and voluntarily submitted himself to personal jurisdiction in Massachusetts with respect to any action "to remedy any breach or otherwise to enforce the terms and conditions of" the agreement. This Court also has personal jurisdiction over Caron pursuant to the Massachusetts Long Arm Statute, M.G.L. c. 223A.

## FACTS

4.      Since its incorporation in Massachusetts in 1981, Cognex, along with its subsidiaries, divisions, and branches, has been engaged in the business of providing leading edge machine vision technology to customers throughout the United States and the world.

5.      Cognex designs, develops, manufactures and markets machine vision systems which are used to emulate and exceed the capabilities of human vision in a wide range of manufacturing processes in the semiconductor, electronics, consumer products, pharmaceutical, aerospace, and general manufacturing industries. These high-level vision systems consist of sophisticated pattern recognition software and high-speed, special purpose computers (vision engines which, when connected to a video camera, interpret video images and generate information about them). Cognex develops standard products which are "building blocks" of hardware and software designed to give its Original Equipment Manufacturer ["OEM"], System Integrator or End User customers the flexibility to configure complete vision solutions without requiring extensive knowledge of image processing or analysis. Cognex's vision software allows the addition and enhancement of software modules to meet evol ing application requirements.

6.      Cognex's overseas operations involve selling its vision systems through corporate subsidiaries and branch offices or via indirect channels (distributors and representatives), which in turn offer customers complete support and service capabilities, as well as access to Cognex resources in the United States. Cognex's European operations presently include branch offices

in Italy, The United Kingdom, France, Germany, The Netherlands, Finland and Sweden, and these offices serve customers located throughout Europe.

7.    Cognex's business activities in France and Belgium operate under the aegis of Cognex International, Inc., a Delaware corporation and wholly owned subsidiary of Cognex with a branch office in Paris, France ["Cognex France"].    Cognex France presently employs approximately 33 people, including sales engineers, applications engineers, software development specialists, and related administrative staff.    These employees serve customers primarily in the geographical area of the Southern Europe region, which is comprised of France, Italy, Spain and Switzerland.

8.    Caron was employed as a Vision Solutions Engineer in Cognex's Vision Solutions Group.    His responsibilities included developing custom machine vision software for discrete and complicated customer applications.

9.    At the time he became employed by Cognex in March 1998, Caron entered into an employment agreement with Cognex (the "Caron Employee Agreement"). Caron also executed an employment agreement containing simultaneous French and English translations of certain terms of his employment with Cognex, including, without limitation, his duty of non-disclosure of proprietary information.    Caron was compensated by a certain salary, together with commissions, stock options and other remuneration.    While employed by Cognex, Caron participated in specialized training programs, some at Cognex's headquarters in Natick, Massachusetts.    Caron regularly received a high degree of supervision and support from Cognex executive and management level personnel in Massachusetts.    Caron gained intimate knowledge of Cognex's software platforms and hardware configurations, as well as Cognex's machine vision field installation procedures and protocols, Cognex's current and prospective products and services, product development and marketing plans, and Cognex's confidential customer lists and information.

10.    Under the terms and conditions of the Caron Employee Agreement, Caron explicitly recognized and acknowledged that, by virtue of his employment, he would receive proprietary

and other confidential information relating to the business of Cognex.  Furthermore, Caron recognized and acknowledged that he would become familiar with and possess certain Cognex confidential information, as well as confidential and trade secret information regarding Cognex's customers.  This confidential information had been entrusted to Cognex by its customers for the sole purpose of enabling Cognex to meet their respective highly specific vision requirements. Caron agreed in writing that after the termination of employment, these confidential and proprietary materials would be returned to Cognex.  Thus, paragraph three of the Caron Employee Agreement states:

### 3.  Proprietary Information

The Employee hereby acknowledges that the techniques, formulas, programs, processes, designs and business and marketing methods used and to be used by the Company are of a confidential and secret character, of great value and proprietary to the Company.  The Company shall give or continue to give the Employee access to the foregoing categories of confidential and secret information and the trade secrets of its customers (collectively, "Proprietary Information"), so long as he or she remains in the employ of the Company, and permit him or her to work thereon and become familiar therewith to whatever extent the Company in its sole discretion determines.  The Employee agrees that without the prior written consent of the Company he or she shall not, during his or her employment with the Company or at any time thereafter, divulge to anyone or use to his or her benefit any Proprietary Information, unless such Proprietary Information shall be in the public domain in a reasonably integrated form through no fault of the Employee.  The Employee further agrees to take all reasonable precautions to protect from loss or disclosure all documents supplied to him or her by the Company and all documents, notebooks, materials and other data relating to any work, research and experiments conducted by him or her or others relating to the Proprietary Information, and upon termination for whatever reason of his or her employment to deliver these documents, notebooks, materials and data forthwith to the Company.

11.    Under the terms and conditions of the Caron Employee Agreement, Caron expressly agreed not to divulge to others or use for his own benefit, during the term of employment or thereafter, any of the Proprietary Information obtained during the course of his employment by Cognex, including but not limited to the information referred to in paragraph 3 of the Caron Employee Agreement.

12.    Under the terms and conditions of the Caron Employee Agreement, Caron recognized and acknowledged that the success of the business of Cognex is substantially derived from the goodwill, reputation and confidential relationship maintained by Cognex with its customers for whom Cognex provides its products and services. Caron agreed that Cognex would suffer irreparable harm, great loss and damage if, during employment or after employment terminated, he sought to compete with Cognex by obtaining employment or an interest in another firm in the same business. Caron expressly covenanted and agreed, therefore, that during the term of his employment and for a certain period immediately following the termination of his employment, he would refrain from engaging in certain specific activities in competition with Cognex. Thus, paragraph four of the Caron Employee Agreement states, in pertinent part:

### 4.  Covenant Not to Compete

4.1    The Employee hereby covenants and agrees that during his or her employment with the Company and for the period of time defined below following termination of his or her employment with the Company, whether voluntary or involuntary and whether with or without cause, he or she will not, without the prior written consent of the President of the Company, directly or indirectly, for himself or herself, or on behalf of any other person or entity:

4.1.1    Through the use of the Proprietary Information or any trade secret of the Company or by any other means, solicit any business relating to any business then conducted by the Company from any customer or client of the Company who was such at any time during the twelve (12) month period immediately preceding such termination, or was actively solicited to become such during said twelve (12) month period, all as verified by the books and records of the Company; or

4.1.2    Cause or encourage anyone or any entity, through the use of the Proprietary Information or any trade secret of the Company or by any other means, to solicit any such business from any of said customers, clients or prospective customers and clients; or

4.1.3    Disclose to anyone or any entity the names or addresses of any of said customers and clients or prospective customers and clients, nor cause any such disclosure, unless such information shall be in the public domain through no fault of the Employee; or

4.1.4    Request or cause any of said customers, clients or prospective customers and clients to cancel or terminate or refuse to enter into any business relationship with the Company; or

4.1.5    Call upon any persons who are employees or consultants of the Company for the purpose of diverting or taking them away from their employment or consultancy with the company; or

4.1.6    Engage as an owner, stockholder, manager, agent, consultant, director or employee in any business competitive with or similar to any business which has been conducted by the Company at any time during the term of his or her employment with the Company; provided that the provisions of this subsection 4.1.6 shall not be deemed breached by the aggregate ownership by the Employee, as the result of open market purchases, of one (1%) percent or less of the capital stock of a corporation, the stock of which is regularly traded on a stock exchange or in the over-the-counter market. The Employee agrees that the granting of stock options to the Employee by the Company ("Employee's Stock Options") and any pre-tax gains realized as a result of the exercise of any portion of such options plus any gains realized as of result of the sale of any shares acquired through the exercise of any portion of such options shall be further consideration to the Employee for the Employee's compliance with the terms of this Subsection 4.1.6. Companies listed in Exhibit 1 are known to be competitors of Cognex as of the date of this Agreement; The list set forth in Exhibit 1 is not comprehensive, and, therefore, the absence of any particular company from this list does not indicate that the particular company is not a competitor of Cognex.

4.2    The duration of the obligations of the Employee under this Section 4 ("Non-Compete Period") shall commence upon the first day of his or her employment by the Company and shall continue for a period of two years following termination of his or her employment with the Company, provided, however, that if the term of such employment was less than two years, the obligations of the Employee under this Section 4 shall continue for the greater of six months or such term; and shall extend throughout the United States of America and any foreign country in which the Company engaged in business during the term of his or her employment with the Company or in which business was actively contemplated by the Company at the time of the termination of such employment. In the event of any violation of any provision of this Agreement, the Non-Compete Period shall be extended for a period of time equal to the period of time which the Employee is in violation.

13.    During his employment with Cognex, Caron attended two (2) intensive training courses at Cognex's headquarters in Natick, Massachusetts. During the period May 4 – 7, 1998, Caron attended the first course, which focused on Cognex's MVS-8000 family of products. The second course was held from August 23 – 26, 1999, and related to Cognex Vision Library, which is a

software development environment created and compiled by Cognex that contains a number of proprietary "machine vision tools."

14.    During the course of his employment with Cognex, Caron gained a thorough knowledge of Cognex's software platforms, as well as Cognex's hardware configurations, and the strengths and weaknesses of those platforms.  Caron had access to Cognex's product plans, its special development software projects and product release information.  Through his employment with Cognex, Caron had access to Cognex's customer lists and had frequent communications with Cognex customers.

15.    As a Vision Solutions Engineer, Caron had access to considerable proprietary technology and confidential trade secret information belonging to Cognex, including new product development.  Caron also had access to confidential and proprietary information entrusted to Cognex by Cognex's customers.  This information places Caron in the unique position to know and understand the technical and commercial requirements and to anticipate the needs of Cognex's customers.

16.    Caron gave notice of his intent to terminate his employment with Cognex on or about June 16, 2003, effective September 19, 2003.  Caron's last day of employment with Cognex was September 19, 2003.

17.    In or about mid May 2004, Cognex confirmed that Caron was employed by Euresys.

18.    Euresys, like Cognex, is a machine vision company and a strong competitor of Cognex in the Southern European region, and particularly in France and Switzerland.  Both Cognex and Euresys focus their marketing efforts towards original equipment manufacturers and system integrators.  Both Cognex and Euresys have competed for business recently at two companies in Switzerland, Ismeca and Compar, and are presently competing for business at Europlacer in France.

19.    Upon information and belief, Caron has recently visited Cognex OEM's in Japan, including Hitachi and Shinkawa, to promote Euresys products.

20.     Cognex is informed and believes and therefore alleges that since the termination of his employment with Cognex, and continuing to the present date, Caron has violated and continues to violate the express and implied covenants in the Caron Employee Agreement by:

      a.     accepting and continuing his employment with Euresys following his employment with Cognex;

      b.     divulging, appropriating and using for his own economic and personal gain the confidential information obtained during the course of his employment by Cognex, including information pertaining to Cognex's trade secrets, technology, new product development, training and sales methods, customer lists and information, pricing and marketing practices;

      c.     competing with Cognex in the territory designated in the Employee Agreement; and

      d.     soliciting customers of Cognex for the purpose and with the effect of diverting such customers from Cognex to Euresys.

**COUNT I**

(Breach of Contract Claim)

21.     Cognex repeats, realleges and incorporates by reference paragraphs 1 through 20 of this Complaint as though fully set forth herein.

22.     Caron has violated explicit and implied covenants in the Caron Employee Agreement by (i) accepting employment with Euresys; (ii) engaging as an owner, stockholder, manager, agent, consultant, director or employee of Euresys; (iii) divulging, appropriating and using for his own personal gain confidential information obtained during the course of employment with Cognex; (iv) performing on behalf of Euresys product development and service activities identical to and/or directly and indirectly competitive with the program at Cognex; (v) competing with Cognex in the territory designated in the Caron Employee Agreement; and (vi) soliciting customers of Cognex for the purpose and with the effect of diverting such customers to Euresys.

23.    As a direct and proximate result of the referenced wrongful and unlawful acts and breach of express and implied covenants of the Caron Employee Agreement, Cognex has suffered and continues to suffer irreparable damage to its business and to its goodwill. As Caron explicitly acknowledged and recognized in the Caron Employee Agreement, Cognex has no adequate remedy at law to rectify the injuries and harm to Cognex proximately caused by Caron's breach of the express and implied covenants in the Caron Employee Agreement. Thus, Cognex has sustained and will continue to sustain irreparable injury and damage unless Caron is enjoined from violating the express and implied covenants in the Caron Employee Agreement.

24.    As a direct and proximate result of Caron's breach of the express and implied covenants of his Employee Agreement, Cognex has suffered and continues to suffer economic harm.

## COUNT II

### (Breach of Implied Covenant)

25.    Cognex repeats, realleges and incorporates by reference paragraphs 1 through 24 of this Complaint as though fully set forth herein.

26.    The relationships and contracts between Caron and Cognex carried within them an implied covenant of loyalty, good faith, and fair dealing.

27.    The conduct of Caron as described above constitutes a breach of the implied covenant of loyalty, good faith, and fair dealing.

28.    As a direct and proximate result of the referenced wrongful and unlawful acts and breach of implied covenant of loyalty, good faith, and fair dealing by Caron, Cognex has suffered and continues to suffer irreparable damage to its business and to its goodwill. Cognex has no adequate remedy at law to rectify the injuries and harm to Cognex proximately caused by these unlawful acts. Cognex has sustained and will continue to sustain irreparable injury unless Caron is enjoined from breaching the implied covenant in the Caron Employee Agreement.

29.    As a direct and proximate result of Caron's breach of the express and implied covenants of the Caron Employee Agreement, Cognex has suffered and continues to suffer economic harm.

## PRAYER FOR RELIEF

WHEREFORE, Cognex requests:

1.     That Caron be preliminarily restrained and subsequently enjoined for a period of two (2) years from the date of final judgment or order of this Court from engaging in or accepting employment with any business competitive with Cognex, including but not limited to Euresys, in violation of his contract with Cognex, and from soliciting any customers of Cognex.

2.     That Caron be preliminarily and permanently enjoined from using, appropriating to his own use or divulging any confidential information obtained from Cognex.

3.     That Caron be ordered and required to return to Cognex all property and proprietary materials of Cognex including, but not limited to, products, computer software, source code, services, business and marketing methods and strategies and records relating to customers, customer lists, and any other property of Cognex, and that Caron be enjoined from making or retaining any copies of such material.

4.     That Cognex be awarded its damages, with interest and costs, for the injury that it has incurred as a result of the unlawful conduct of Caron.

5.     For such other and further relief as this Court shall deem just and proper, including costs, disbursements and reasonable attorneys' fees.


## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a trial by jury on all issues so triable.

THE PLAINTIFF,
COGNEX CORPORATION,
By its attorneys,


James E. O'Connell, Jr., BBO# 376475
Jennifer A. Yelen, BBO# 565205
PERKINS SMITH & COHEN LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 854-4000

Dated: August 2, 2004

# COGNEX

Vision for Industry®

## EMPLOYEE INVENTION, NON-DISCLOSURE AND NON-COMPETITION AGREEMENT

AGREEMENT entered into this __1·6__ day of __∩A ₹ ₵_____, 199 **b**, by and between Cognex Corporation, a Massachusetts corporation with a principal place of business at One Vision Drive, Natick, Massachusetts 01760-2059 and any of its affiliates, subsidiaries, successors and assigns as presently constituted and as may be established in the future (the "Company") and_____ _X₁₀ CA ₨ ₒ N_____, the undersigned employee of the Company (the "Employee").

IN CONSIDERATION OF the hiring of the Employee by the Company and for the wages and other benefits provided to the Employee by the Company during the Employee's period of employment with the Company, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Employee, the Employee hereby agrees with the Company as follows:

1.    Invention and Discoveries

"Inventions and Discoveries" are herein defined as all inventions, discoveries, enhancements, ideas and improvements (whether or not patentable) and all writings, compilations, programs, documentation and reports related thereto (whether or not copyrightable) made, conceived, devised, discovered or prepared by the Employee, including the work product resulting from any project undertaken by him or her, whether solely or jointly with others, at any time, whether during or after regular working hours, while he or she remains in the employ of the Company, and for a period of six (6) months thereafter, and which relate in any manner to the actual or anticipated business of the Company or the actual or anticipated research and development of the Company or are suggested by or result from any of the work performed by the Employee for or on behalf of the Company.  Inventions and Discoveries are, and shall be and remain, the sole and exclusive property of the Company, and the Employee hereby assigns to the Company and agrees to assign to the Company his or her entire right, title and interest in the Inventions and Discoveries. The Employee hereby grants to the Company a non-exclusive, unlimited, irrevocable and fully paid, royalty free license, without additional compensation, of the Employee's rights to any invention, improvement or enhancement made, conceived, devised or discovered by the Employee prior to the Employee's employment by the Company and incorporated by the Employee in any work product produced by the Employee during the Employee's employment with the Company.

Inventions and Discoveries shall not include those inventions, discoveries, enhancements, or ideas made by the Employee during non-business hours except for those which: a) relate in any manner to the actual or anticipated business of the Company or the actual or anticipated research and development of the Company, or b) result from any of the work performed by the Employee for or on behalf of the Company, or c) were made by the Employee with the use of Company facilities, equipment, supplies, or trade secrets.

2.    Disclosure of Inventions and Discoveries

The Employee agrees promptly to disclose the Inventions and Discoveries to the President of the Company or to whomever else may be designated by the President, and to execute a specific assignment thereof to the Company.  The Employee further agrees to assist the Company in any reasonable manner to obtain for its own benefit patents or copyrights thereon in any and all countries, and to execute when requested patent or copyright applications and assignments thereof to the Company and any other documents deemed necessary by the Company to carry out the purposes of this Agreement, all without further consideration, but at the expense of the Company.  The Employee agrees that the obligations and undertakings stated in this section shall continue beyond the termination of his or her employment with the Company indefinitely (regardless of the reason for such termination), but if he or she shall be called upon t

render such assistance after the termination of his or her employment, he or she shall be entitled to a fair and reasonable fee in addition to reimbursement for any expenses incurred at the request of the Company. The disclosure requirements of this Section 2 shall also apply to any inventions, discoveries, enhancements, ideas and improvements and all writings, compilations, programs, documentation and reports related thereto made, conceived, devised, discovered or prepared by the Employee after the termination of the Employee's employment with the Company which in any way arise from or are based upon any proprietary information, trade secret or other intellectual property belonging to the Company or for which the Company possesses a license.

3.     Proprietary Information

The Employee hereby acknowledges that the techniques, formulas, programs, processes, designs and business and marketing methods used and to be used by the Company are of a confidential and secret character, of great value and proprietary to the Company. The Company shall give or continue to give the Employee access to the foregoing categories of confidential and secret information and the trade secrets of its customers (collectively, "Proprietary Information"), so long as he or she remains in the employ of the Company, and permit him or her to work thereon and become familiar therewith to whatever extent the Company in its sole discretion determines. The Employee agrees that without the prior written consent of the Company he or she shall not, during his or her employment with the Company or at any time thereafter, divulge to anyone or use to his or her benefit any Proprietary Information, unless such Proprietary Information shall be in the public domain in a reasonably integrated form through no fault of the Employee. The Employee further agrees to take all reasonable precautions to protect from loss or disclosure all documents supplied to him or her by the Company and all documents, notebooks, materials and other data relating to any work, research and experiments conducted by him or her or others relating to the Proprietary Information, and upon termination for whatever reason of his or her employment to deliver these documents, notebooks, materials and data forthwith to the Company.

4.     Covenant Not to Compete

4.1     The Employee hereby covenants and agrees that during his or her employment with the Company and for the period of time defined below following termination of his or her employment with the Company, whether voluntary or involuntary and whether with or without cause, he or she will not, without the prior written consent of the President of the Company, directly or indirectly, for himself or herself, or on behalf of any other person or entity:

4.1.1     Through the use of the Proprietary Information or any trade secret of the Company or by any other means, solicit any business relating to any business then conducted by the Company from any customer or client of the Company who was such at any time during the twelve (12) month period immediately preceding such termination, or was actively solicited to become such during said twelve (12) month period, all as verified by the books and records of the Company; or

4.1.2     Cause or encourage anyone or any entity, through the use of the Proprietary Information or any trade secret of the Company or by any other means, to solicit any such business from any of said customers, clients or prospective customers and clients; or

4.1.3     Disclose to anyone or any entity the names or addresses of any of said customers and clients or prospective customers and clients, nor cause any such disclosure, unless such information shall be in the public domain through no fault of the Employee; or

4.1.4     Request or cause any of said customers, clients or prospective customers and clients to cancel or terminate or refuse to enter into any business relationship with the Company; or

4.1.5     Call upon any persons who are employees or consultants of the Company for the purpose of diverting or taking them away from their employment or consultancy with the Company; or

4.1.6    Engage as an owner, stockholder, manager, agent, consultant, director or employee in any business competitive with or similar to any business which has been conducted by the Company at any time during the term of his or her employment with the Company; provided that the provisions of this Subsection 4.1.6 shall not be deemed breached by the aggregate ownership by the Employee, as the result of open market purchases, of one (1%) percent or less of the capital stock of a corporation, the stock of which is regularly traded on a stock exchange or in the over-the-counter market. The Employee agrees that the granting of stock options to the Employee by the Company ("Employee's Stock Options") and any pre-tax gains realized as a result of the exercise of any portion of such options plus any gains realized as a result of the sale of any shares acquired through the exercise of any portion of such options shall be further consideration to the Employee for the Employee's compliance with the terms of this Subsection 4.1.6. Companies listed in Exhibit 1 are known to be competitors of Cognex as of the date of this Agreement; The list set forth in Exhibit 1 is not comprehensive, and, therefore, the absence of any particular company from this list does not indicate that the particular company is not a competitor of Cognex.

4.2    The duration of the obligations of the Employee under this Section 4 ("Non-Compete Period") shall commence upon the first day of his or her employment by the Company and shall continue for a period of two years following termination of his or her employment with the Company, provided, however, that if the term of such employment was less than two years, the obligations of the Employee under this Section 4 shall continue for the greater of six months or such term; and shall extend throughout the United States of America and any foreign country in which the Company engaged in business during the term of his or her employment with the Company or in which business was actively contemplated by the Company at the time of the termination of such employment. In the event of any violation of any provision of this Agreement, the Non-Compete Period shall be extended for a period of time equal to the period of time which the Employee is in violation.

5.    Employee's Representation and Warranties

The Employee hereby represents and warrants to the Company that:

5.1    prior to his or her employment by the Company, he or she had no detailed knowledge of, experience with, or training in the specification, design, manufacture or marketing of machine vision systems other than as may be described in writing and attached hereto as Exhibit 2; and

5.2    he or she is not a party to or in any way bound by any prior agreement whether with a prior employer or otherwise, which could in any way prohibit him or her from becoming an employee of the Company or from carrying out his or her obligations under this Agreement, including specifically, but without limitation to, his or her obligations under Sections 1 and 2 of this Agreement; and

5.3    he or she will not disclose to any employee or representative of the Company information of any former employer or client which is of a confidential nature.

6.    Remedy for Breach

6.1    The Employee expressly recognizes that this Agreement is necessary to protect the legitimate business interests of the Company and that any breach of this Agreement by the Employee is likely to result in irreparable injury to the Company. The Employee agrees that the Company shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction, either in law or in equity, to obtain damages for any breach of this Agreement; to enforce the specific performance of this Agreement by the Employee; and to enjoin the Employee from activities in violation of this Agreement without the necessity of Cognex proving any damage to the Company. Further, the Company reserves any and all rights and remedies which may be available at law, in equity or otherwise, whether based upon common law, statute or other source of law, with respect to any breach or violation of this Agreement.

6.2    In the event a court of competent jurisdiction determines that the Employee has violated Section 4.1, Subsection 4.1.6 of this Agreement, then the Employee agrees to pay to the Company additional damages in an amount equal to the total of all pre-tax gains realized by the Employee as a result of the exercise by him or her of any portion of the Employee's Stock Options plus any gains realized as a result of the sale of any shares acquired through the exercise of any portion of such options.

7.    Voluntary Execution

The Employee specifically acknowledges that he or she has read, carefully considered, and understands this Agreement, that each of the terms and conditions of this Agreement are fair and reasonable, that he or she executes this Agreement voluntarily, and that this Agreement is not the product of fraud, duress or coercion. The Employee acknowledges that he or she has not executed this Agreement in reliance upon any promises, representations, warranties, or statements not incorporated by reference into the Agreement. Further, the Employee agrees that this Agreement was fairly and fully bargained for in good faith prior to commencing employment with the Company, and that the terms and conditions of this Agreement, including those covenants in Section 4, do not constitute any impairment of the Employee's ability to pursue a livelihood during the Non-Compete Period. To the extent that the terms and conditions of this Agreement, including those covenants in Section 4, constitute an impairment of the Employee's ability to work within his or her field of expertise during the Non-Compete Period, the Employee hereby agrees that this Agreement provides fair and adequate consideration for any such impairment.

8.    Entire Agreement; Modification

This Agreement contains the entire understanding and agreement between the parties hereto with respect to the matters referred to in this Agreement. This Agreement may be altered, amended or superseded only by an agreement in writing, signed by both parties or the party against whom enforcement of any waiver, change, modification, extension or discharge is sought. No action or course of conduct shall constitute a waiver of any of the terms and conditions of this Agreement, unless such waiver is specified in writing, and then only the extent so specified. A waiver of any of the terms and conditions of this Agreement on one occasion shall not constitute a waiver of the other terms and conditions of this Agreement, or of such terms and conditions on any other occasion.

9.    Severability

The Employee and Cognex hereby expressly agree that the provisions of this Agreement are severable and, in the event that any court of competent jurisdiction shall determine that any provision or covenant herein contained is invalid,  or overly broad or unreasonable under applicable law, in whole or in part, the court is hereby requested and authorized by the parties hereto to revise said provision or covenant so as to provide the maximum benefit allowed by law to Cognex, and that the remaining provisions or covenant shall remain unchanged and enforceable. In the event that the court determines that Section 4 of this Agreement would be enforceable except for reason of lack of adequate consideration herein, then the court

is further hereby requested to determine such additional consideration such that, if paid by the Company to the Employee, the court would find Section 4 binding and enforceable upon the Employee. The Company shall then have the sole right to pay such additional consideration to the Employee, and failing such payment, the Company shall then abide by the court's determination.

10.    Binding Effect; Benefit

This Agreement shall be binding upon the Employee, without regard to the duration of his or her employment by the Company or the reasons for the cessation of such employment, which cessation may be voluntary or involuntary, and which may be with or without cause. This Agreement shall also be binding upon the Employee's administrators, executors, heirs, and assigns, and shall inure to the benefit of the Company.

11.    Executed Copy

One original signed copy of this Agreement shall be executed and maintained on file by the Company. The Employee shall receive a copy of the signed original which shall be considered and have the force and effect of the original.

12.    Governing Law

The validity, interpretation and performance of this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts excluding said state's choice of law rules. The parties hereto voluntarily submit themselves to the jurisdiction of the Courts of the Commonwealth of Massachusetts with respect to any action to remedy any breach or to otherwise enforce the terms and conditions of this Agreement.

13.    Effective Date

This Agreement shall be deemed effective as of the first date of employment of the Employee by the Company. In the event this Agreement is executed by the Employee at a date following the first date of employment of the Employee by the Company, the Employee represents that he or she has complied with all of the terms herein during the period commencing upon his or her employment by the Company to the date first written above.

The above is hereby agreed and accepted:

Employee: _____

(Employee Signature)

JEAN CARON
(Printed Name)

Address: 22 square Molière
92200 Boulogne Mk, FRANCE

Cognex Corporation:

By: _____

(Authorized Company Signature)

I, _Valerie Ryder_, hereby attest to the witnessing of the above Employee signature on this _16_ day of _March_, 199_8_: (x) _Valerie Ryder_.

Exhibit 1

Companies listed below in this Exhibit 1 are known to be competitors of Cognex as of the date of this Agreement. The list set forth in this Exhibit 1 is not comprehensive, and, therefore, the absence of any particular company from this list does not indicate that said company is not a competitor of Cognex.

Cognex & Acumen Product Competitors:

Adept
AISI
Allen Bradley
Ball Corp.
Bar Gold
Basler
Coreco
CR Technology
CRS (Computer Recognition Systems)
CyberOptics
Datacube
Data Translation
Dickerson
ESI (including: Intellidex and XRL)
Fast
ICOS
Imaging Technology (including: Intelec)
Imputer
Integral Vision Ltd. (subsidiary of Medar)
Keyence
KLA
Label Vision
Matrox
Matsushita
MTI (Mathematical Technologies)
Mneumonics
National Instruments
Noesis
Omron
Optimas
Philips Electronics
PPT
Qtec
Rheinmetall
RVSI (including: Acuity/Itran/ID Matrix)
Sharp
Videk
View Engineering
У

Isys Product Competitors:

ABB, Ulma Division
Dr. Schenk, GMBH
EES, Ltd.
Focus Automation
Futec
Intec
Mayan Automation
Measurex, Roibox division
Sira
Sipar
Systronics
Toshiba
Veritas

The information set forth in this Exhibit 1 is agreed to and understood by:

Employee: ___S C____          Company:_____
    (Please initial)              (Please initial)

**Exhibit 2**

Description of the Employee's prior detailed knowledge of, experience with, or training in the specification, design, manufacture or marketing of machine vision systems:

I worked with the Université de Lille and the Université du littoral  in a Vision Laboratory from 1992 to 1998

I have developped some industrial vision applications :

- Installation of an Automated Online inspection system by VME machine and line scan camera at the Fabrique de Fer de Maubeuge in Maubeuge plant (France) to inspect sheet iron

- Development and installation of an Automated Online inspection system by PC and line scan camera at the Union Minière in the Viviez plant (France) to inspect zinc.

- Development and installation of  a vision based system by PC to inspect offline and online plastic film at S.A. Guial in Villefranche sur Saône plant(France).

- I worked as an Engineer in S.A. Bernhardt based in Boulogne sur Mer (France) from 01/1996 until 03/13/1998.
  I developed and installed an Automatic Online Visual Inspection for plastic strip based on line scan camera.

The information set forth in this Exhibit 2 is agreed to and understood by:

Employee: ___ЅС___                    Company:_____
   (Please initial)                              (Please initial)

| CIVIL ACTION COVER SHEET | 04-3040 | Trial Court of Massachusetts Superior Court Department County: Middlesex |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| COGNEX CORPORATION | JEAN CARON |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE    617-854-4217<br>Perkins Smith & Cohen LLP<br>One Beacon Street, 30th Floor<br>Boston, MA 02108<br>Board of Bar Overseers number:    376475 | ATTORNEY (if known) |

## Origin code and track designation

Place an x in one box only:

[X] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A01 | Breach of Contract | ( F ) | ( X ) Yes    ( ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ............................................. $ ...........
2. Total Doctor expenses .............................................. $ ...........
3. Total chiropractic expenses ......................................... $ ...........
4. Total physical therapy expenses ..................................... $ ...........
5. Total other expenses (describe) ..................................... $ ...........

Subtotal $ ...........

B. Documented lost wages and compensation to date ...................... $ ...........
C. Documented property damages to date ................................ $ ...........
D. Reasonably anticipated future medical and hospital expenses ........... $ ...........
E. Reasonably anticipated lost wages .................................. $ ...........
F. Other documented items of damages (describe)

$ ...........

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

$ ...........

TOTAL $ ...........

*[Stamp: FILED IN THE OFFICE OF THE CLERK OF THE COURTS FOR ... AUG 0 2 2004 ... CLERK]*

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s): The Plaintiff, Cognex Corporation, brings this action against the Defendant, Jean Caron, requesting equitable injunctive relief to enforce the terms and conditions of an express written employment contract with the Defendant and seeking to recover damages for breach of contract and breach of the implied covenant of good faith and fair dealing.

EXCEEDING TOTAL $30,000.00 ....

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT
None

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of record _____ DATE August 2 04

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

MAS-20031124
gilmanr

11/17/2004
09:13 AM

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

## MICV2004-03040
### Cognex Corporation v Caron

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 08/02/2004 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 11/08/2004 | **Session** | D - Cv D (7A Cambridge) | | |
| **Origin** | 1 | **Case Type** | A01 - Services, labor, materials | | |
| **Lead Case** | | **Track** | F | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 10/31/2004 | **Answer** | 12/30/2004 | **Rule12/19/20** | 12/30/2004 |
| **Rule 15** | 12/30/2004 | **Discovery** | 05/29/2005 | **Rule 56** | 06/28/2005 |
| **Final PTC** | 07/28/2005 | **Disposition** | 09/26/2005 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Cognex Corporation
Active 08/02/2004

**Private Counsel 376475**
James E O'Connell Jr
Perkins Smith & Cohen
1 Beacon Street
Boston, MA 02108
Phone: 617-854-4000
Fax: 617-854-4040
Active 08/03/2004 Notify

**Defendant**
Jean Caron
Served: 10/13/2004
Served (answr pending) 11/02/2004

**Private Counsel 629688**
Sally L Adams
Seyfarth Shaw
World Trade Center East
2 Seaport Lane
Boston, MA 02210-2028
Phone: 617-946-4800
Fax: 617-946-4801
Active 11/08/2004 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 08/02/2004 | 1.0 | Complaint & civil action cover sheet filed |
| 08/02/2004 | | Origin 1, Type A01, Track F. |
| 08/02/2004 | 2.0 | Plaintiff Cognex Corporation's MOTION for Temporary Restraining order. after review, Allowed. (Locke, J.) |
| 08/02/2004 | 3.0 | Application of plaintiff's for preliminary injunction. |
| 08/02/2004 | 4.0 | Plaintiff's memorandum in support of application for preliminary injunction. |
| 08/02/2004 | 5.0 | TEMPORARY RESTRAINING ORDER:   1. Defendant, and all persons in active concert or participating with him who receive actual notice of this Order, are hereby restrained and enjoined from: (1) engaging in or accepting employment with any business competitive with Cognex, including but not limited to Euesys SA., in violation of his contract with Cognex, and from soliciting any customers of Cognex; (2) divulging, appropriating, or using to his own gain any confidential information obtained from Cognex, (3)violating in any manner the agreement between the plaintiff and defendant; and (4)  retaining any proprietary and equipment and confidential information belonging to plaintiff. 2. This Temporary Restraining Order shall expire by its |

case01 197593 y y y y n n

MAS-20031124
gilmanr

Case 1:04-cv-12365-JLT   Document 10   Filed 11/18/2004   Page 38 of 39
Commonwealth of Massachusetts
MIDDLESEX SUPERIOR COURT
Case Summary
Civil Docket

11/17/2004
09:13 AM

## MICV2004-03040
## Cognex Corporation v Caron

| Date | Paper | Text |
|------|-------|------|
| | 5.0 | terms on August 11, 2004. A hearing on Plaintiff's Application for preliminary Injunction shall be held on August 11, 2004 at 2:00pm at the Middlesex County Superior Court, Room 7A. All until further Order of the Court. (Locke, J.) |
| 08/02/2004 | 6.0 | TEMPORARY RESTRAINING ORDER issued; $90.00 fee received, returnable August 11, 2004 at 2:00pm in courtroom &A under Temporary Restraining Order (paper #5). (Locke, J.) |
| 08/11/2004 | 7.0 | Plaintiff Cognex Corporation's MOTION For Extension of Temporary Restraining Order Pursuant to Mass.R.Civ.P.65(a); Filed in Court. |
| 08/11/2004 | 8.0 | PROPOSED EXTENSION FOR TEMPORARY RESTRAINING ORDER. It is hereby Ordered and Adjudged as follows: The Temporary Restraining Order scheduled to expire on August 11, 2004, shall be entended for a period of ninety (90) days, until November 8, 2004, to allow Cognex to serve the Defendant pursuant to the requirements of the Hague Convention, or not more than two weeks after return of service, whichever is earlier. All until further Order of the Court. Dated this 11th day of August, 2004. (Stephen E. Neel, Justice) Certified copy given in hand on 08/11/04. |
| 10/25/2004 | 9.0 | Plff's Emergency Motion for Extension of Temporary Restraining Order Pursuant to Mass. R. Civ. P. 65(a). Filed in Court and Allowed until November 16, 2004. (MacLeod, J.) |
| 11/02/2004 | 10.0 | SERVICE RETURNED (TRO): Jean Caron, service made on October 13, 2004 (in hand) in Amiens, France. Returned into Court. |
| 11/08/2004 | 11.0 | Case REMOVED this date to US District Court of Massachusetts by deft Jean Caron |
| 11/08/2004 | | ABOVE ACTION THIS DAY REMOVED TO US DISTRICT COURT |