UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| COGNEX CORPORATION,<br><br>            Plaintiff,<br><br>        v.<br><br>JEAN CARON,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)  CIVIL ACTION NO.  04-12365 JLT<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Defendant Jean Caron ("Caron") submits this Opposition to Plaintiff's Motion to Remand pursuant to Local Rule 7.1(B)(2). Remand is not appropriate because the amount in controversy, measured by the value to the parties of the conduct that plaintiff seeks to enjoin, meets the jurisdictional threshold.

## INTRODUCTION

On August 2, 2004, Plaintiff Cognex Corporation ("Plaintiff" or "Cognex") filed suit in the Middlesex County Massachusetts Superior Court against Caron, a French citizen now living and working in Belgium,[1] alleging breach of contract and breach of implied covenant claims arising out of a contract of adhesion written in English that Caron was required to sign as an employee of a Cognex subsidiary in France. On November 8, 2004, Caron removed the case to this Court on grounds of alienage jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), and on

---

[1] Plaintiff makes an apparent attempt to impugn Caron's integrity and justify its own failure to promptly serve process in this matter, by alleging that Caron "had misrepresented his then current address." Plaintiff's Motion to Remand, ¶ 2; Plaintiff's Memorandum of Law in Support of its Motion to Remand, p. 4. Caron made no misrepresentation, as he was simply asked where to send materials related to his retirement benefits. Further, plaintiff fails to point out that if any misrepresentations were made, it was by the Cognex subsidiary to Caron regarding its reasons for attempting to contact him. *See* Affidavit of Sybille de Monplanet in Support of Motion for Permanent Injunction, ¶¶ 5,6.

November 16, 2004 moved to dismiss for lack of personal jurisdiction, or in the alternative, for *forum non conveniens* or insufficiency of service of process. On November 17, 2004, Plaintiff moved to remand this action to the Massachusetts Superior Court. Plaintiff concedes that the citizenship requirements of the statute are met, but argues that Caron has not shown that the amount in controversy exceeds the statute's $75,000 jurisdictional threshold. As discussed more fully below, Plaintiff's argument is without merit because the costs to Caron of complying with Plaintiff's requested injunction would certainly exceed $75,000, and because there is ample evidence that the value to Plaintiff of the injunction it seeks exceeds $75,000.

> **I.     To Avoid Remand, Caron Needs Only to Show by a Preponderance of the Evidence that the Value of the Conduct Plaintiff Seeks to Enjoin Exceeds $75,000.**

When a case is removed to federal court on the basis of diversity jurisdiction and, as here, the plaintiff fails to specify the amount of damages claimed in its complaint, all Circuit Courts of Appeal to have reached the issue of the burden of proof to be applied have concluded that the defendant seeking removal must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement. *See Garcia* v. *Koch Oil Co. of Texas Inc.*, 351 F.3d 636, 638-639 (5th Cir. 2003); *In re Minnesota Mut. Life Ins. Co. Sales Practices Litigation*, 346 F.3d 830, 834 (8th Cir. 2003); *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002); *Green v. Harsco Corp.*, 215 F.3d 1336, 2000 WL 745353, **3 (10th Cir. 2000); *Sanchez* v. *Monumental Life Ins. Co*., 102 F.3d 398, 404 (9th Cir. 1996).

Where, as here, the plaintiff primarily seeks injunctive relief, rather than monetary damages, "the value of the matter in controversy is measured not by the monetary judgment which the plaintiff may recover but by the judgment's pecuniary consequences to those involved in the litigation." *Richard C. Young & Co., Ltd. v. Leventhal*, 389 F.3d 1 (1st Cir. 2004); *Hunt* v. *Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Dismissal is appropriate only if it

appears to a "legal certainty" that the jurisdictional amount is not met. *See id*. at 346-48. In this case, plaintiff seeks primarily injunctive relief, rather than monetary damages,[2] and the amount in controversy is measured by the value to the parties of the conduct that plaintiff seeks to enjoin.

> II. **The Amount in Controversy Requirement is Met in this Case because the Costs to Caron of Complying with the Injunction Exceed $75,000.**
>
>> A. **The value of the case to Defendant may be used to satisfy the amount in controversy requirement.**

The growing trend, though not unanimous, among the Circuit Courts of Appeal concerning the factors a District Court may take into account in assessing whether the amount in controversy requirement is met, is toward a flexible approach whereby the amount in controversy requirement can be met by showing that the value of the case, from the viewpoint of either the plaintiff or the defendant, exceeds $75,000. *See BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 553 (7th Cir. 2002) (holding that amount in controversy is not the amount sought by plaintiff, but amount at stake to either party); *City of Moore, Okl.* v. *Atchison, Topeka, and Santa Fe Ry. Co.*, 699 F.2d 507, 509 (10th Cir. 1983) ("To determine the amount in controversy, we look to the pecuniary effect an adverse declaration will have on either party to the lawsuit"); *Sanchez*, 102 F.3d at 405 (holding that amount in controversy requirement satisfied where either party can gain or lose the jurisdictional amount); *Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978) (holding that courts assessing amount in controversy may look to either "'the value of the right that plaintiff seeks to enforce or protect' or to the cost to the defendants to remedy the alleged denial"); *Government Employees Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964) (holding that amount in controversy is pecuniary result to either party that a judgment

---

[2] In its motion to remand, Plaintiff characterizes the amount in controversy in this matter as follows: "The relief requested by Plaintiff … is largely equitable in nature. Although Plaintiff makes reference to 'economic harm' it has suffered as a consequence of Defendant's employment by a competitor, it, significantly, identifies no specific amount of economic damages and no specific facts one could use to quantify such damages at this juncture." Plaintiff's Motion at 3.

-3-

would produce); *Hairston* v. *Home Loan and Investment Bank*, 814 F. Supp. 180, 181 (D. Mass 1993) (collecting authorities); *c.f. Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 973 (11th Cir. 2002); *In re Corestates Trust Fee Litig.*, 39 F.3d 61, 65 (3d Cir. 1994); *Central Mexico Power & Light Co. v. Munch*, 116 F.2d 85, 87 (2d Cir. 1940).

Though the First Circuit has yet to directly address the issue, there are substantial indications that the First Circuit and the District Courts within its jurisdiction have recognized or will follow the trend toward the more flexible "either viewpoint" approach, especially in cases where injunctive relief is sought. *Richard C. Young, Co., Ltd. v. Leventhal*, *supra* (holding that value of injunctive relief measured by pecuniary consequences "to those involved in the litigation"); *Com. of Massachusetts v. United States Veterans Admin.*, 541 F.2d 119, 122 n.3 (1st Cir. 1976) (relying on pecuniary burden on defendant if plaintiff prevailed to satisfy amount in controversy requirement); *Williams v. Kleppe*, 539 F.2d 803, 804 n.1 (1st Cir. 1976) (suggesting that amount in controversy requirement may be met by "claimed pecuniary burden on defendants were plaintiffs to prevail"); *Berman v. Narragansett Racing Ass'n*, 414 F.2d 311, 314-15 (1st Cir. 1969) (holding amount in controversy requirement met where judgment plaintiff sought would cost defendant more than jurisdictional amount); *Richard C. Young, Co., Ltd. v. Leventhal*, 298 F. Supp. 2d 160, 171 (D. Mass. 2003) (noting trend toward exercise of diversity jurisdiction where value of case to either plaintiff or defendant exceeds statutory threshold), *rev'd on other grounds*, 389 F.3d 1 (1st Cir. 2004); *Sopena v. Colejon Corp.*, 920 F. Supp. 259, 263 (D.P.R. 1996) (holding defendant's viewpoint approach appropriate where plaintiff seeks equitable relief); *Grotzke v. Kurz*, 887 F. Supp. 53, 55-56 (D.R.I. 1995) ("…a number of courts have favored the 'either party' or 'defendants'' viewpoint in cases involving injunctive relief. Commentators have likewise acknowledged the 'clear trend' to sanction jurisdiction where the

amount in controversy requirement is satisfied from the defendant's viewpoint."); *Ferris v. General Dynamics Corp.*, 645 F. Supp. 1354, 1361 (D.R.I. 1986) ("There is no doubt that, in certain circumstances, it makes considerable sense to examine the amount in controversy from the defendant's viewpoint.").

> **B.    Use of Defendant's Viewpoint is Particularly Appropriate in this Case because Plaintiff seeks Primarily Injunctive Relief and has Refused to Quantify its Putative Damages.**

Where a plaintiff seeks primarily equitable relief restraining conduct by the defendant, the defendant's viewpoint approach is particularly appropriate or even necessary. *McNutt* v. *General Motors Acceptance Corp.*, 298 U.S. 178, 181 (1936) (holding that if the object of litigation is to be free of certain regulation, federal question amount in controversy is the cost of compliance that would follow the enforcement of that regulation). In cases primarily involving money damages, the relief sought by the plaintiff is equivalent to the liability to which the defendant is exposed. *See Sopena v. Colejon Corp.*, 920 F. Supp. 259, 263 (D.P.R. 1996) (citing *Ferris v. General Dynamics Corp.*, *supra*). In cases primarily involving equitable relief, however, a court must find other ways to quantify the value of the litigation. *Ferris,* 645 F. Supp. at 1362. Unlike a judgment for money damages, a judgment awarding equitable relief may not be of equal value to both parties; the cost to a plaintiff of the defendant's unabated conduct may be more or less than the cost to the defendant of complying with the proposed injunction. *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 553 (7th Cir. 2002); *Ferris,* 645 F. Supp. at 1362. A number of courts have recognized that, in such circumstances, the exercise of diversity jurisdiction is appropriate if, from the viewpoint of either party, more than the statutory amount could fairly be said to be in controversy. *BEM I, L.L.C.*, 301 F.3d at 553 ("It seems to us beyond absurd to allow a defendant to remove if the plaintiff is seeking damages of $75,000.01, but not if the plaintiff is seeking an injunction directing the defendant to tear down

… a $10 million building …"); *Sopena*, 920 F. Supp. at 263-64; *Ferris,* 645 F. Supp. at 1362 (collecting authorities).

Plaintiff's argument for remand of this action is founded on its observation that a defendant removing an action to the federal courts bears the burden of establishing federal subject matter jurisdiction. This uncontroversial contention provides an additional reason to adopt a defendant's viewpoint approach in assessing the amount in controversy in this case. Courts traditionally adopted a plaintiff's viewpoint approach to the amount in controversy because, in most cases, the plaintiff, as the party seeking to invoke the jurisdiction of the federal courts, bears the burden of establishing subject matter jurisdiction. *Ferris*, 645 F. Supp. 1361 n.7. This rationale for adopting the plaintiff's viewpoint has no application in a case such as this, where Defendant seeks to avail himself of the protections of federal alienage jurisdiction. *BEM I, L.L.C.*, 301 F.3d at 553 (noting that assessment of value of removed case from defendant's viewpoint is sensible because purpose of removal on basis of the diversity statute is protection of defendant); *Ferris*, 645 F. Supp. 1361 n.7.

The argument for adopting a defendant's viewpoint approach in this case is further bolstered by the fact that Cognex's allegations are too vague to allow the court to assess the value of this case to Plaintiff. Cognex has assiduously avoided allegations that would assist Defendant or the court in quantifying Plaintiff's claimed damages.[3] In fact, Cognex has averred that the alleged competitive advantage it seeks to protect through the instant lawsuit "is virtually incapable of being assigned a precise dollar value." Plaintiff's Memorandum in Support of Application for Preliminary Injunction ("PI Application") at 6. As more fully discussed below, the value of this case to Defendant is comparatively easy to assess. Cognex seeks an injunction that will effectively prohibit Caron from working in his professional field for a period of two

---

[3]   *See* quoted text at note 2, *supra*.

years.  *See Tab A*, *Affidavit of Jean Caron in Support of Defendant's Opposition to Plaintiff's Motion to Remand* ("*Second Caron Aff.*"), ¶¶ 6-8.  The value of this case to Caron is, therefore, roughly equivalent to twice his annual salary of $77,300.  *Second Caron Aff*, ¶ 5.  The ease with which the value of the case to Defendant can be assessed provides another compelling reason for the court to adopt a defendant's viewpoint approach in this case.  To do otherwise would be to allow Plaintiff to subvert the proper jurisdiction of this court by resort to designedly vague allegations regarding its putative damages.

### C. The Value of this Case to Caron Exceeds $75,000.

Assessed from Caron's viewpoint, this case undoubtedly meets the amount in controversy requirement.  Caron is an engineer in the highly specialized field of machine vision systems.  *See Affidavit of Jean Caron in Support of Defendant's Motion to Dismiss*, ¶ 4.[4]  Caron has invested substantial time and effort pursuing education and work experience in developing this as his professional career.  *Id.*  Plaintiff seeks an injunction that would functionally prevent Caron from working in the field of machine vision systems for two years.  *See* Complaint, p. 10.  Acting *ex parte*, Cognex has already secured a restraining order that purports to prohibit Caron from working for any business competitive with Cognex, which Plaintiff asserts to include, in effect, any company producing any component of machine vision systems.  *See* August 2, 2004, Order of the Massachusetts Superior Court.  Because Caron's engineering expertise is so specialized, such an injunction would effectively exclude him from the job market.  *Second Caron Aff.*, ¶¶ 6-8.

---

[4]  The court is not limited to the allegations in the pleadings in assessing the amount in controversy, and may consider affidavits in adjudicating Plaintiff's motion to remand.  *Department of Recreation & Sports* v. *World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir. 1991); *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc*., 30 F.3d 298, 305 (2d Cir. 1994).

As a vision systems engineer for Cognex, Caron received annual compensation in excess of 46,500 €. *Second Caron Aff.*, ¶ 4. In his current employment, which Cognex seeks to enjoin, Caron receives annual compensation of approximately 58,128 €, the approximate equivalent of $77,300. *Second Caron Aff.*, ¶ 5. Caron has no reason to expect his earnings potential to decrease in the two years in which Cognex seeks to enjoin him from working in his professional field. *Id.* If anything, Caron's compensation is likely to increase in the next two years, if he is not excluded from his profession. *Ibid.* Even at the lower salary he received from Cognex, Caron's cost of complying with the injunction Cognex seeks would in excess of $175,000, well in excess of the statutory amount in controversy requirement.

### III. Even Assessed from Plaintiff's Viewpoint, The Amount in Controversy Requirement is Met in this Case.

#### A. Plaintiff does not deny that this case is worth more than $75,000.

Even if assessed from Plaintiff's viewpoint, this case meets the amount in controversy requirement. Plaintiff asserts that, given the vague allegations Cognex has made thus far in the case, Caron cannot prove that the case is worth more than the jurisdictional amount. *See* Plaintiff's Motion to Remand, ¶ 4; Plaintiff's Memorandum of Law in Support of its Motion to Remand, pp. 7-8. These non-committal pleading tactics provide further reason for this Court to refuse to remand this case for failure to meet the amount in controversy requirement. *See Hayes* v. *Equitable Energy Resources Co.*, 266 F.3d 560, 572-73 (6th Cir. 2001) (refusing remand where plaintiff was unwilling to stipulate in case seeking money damages that damages were less than jurisdictional amount, despite having moved for remand on basis that claim did not meet amount in controversy requirement). Even if this Court does not rely on Plaintiff's nebulous pleading strategy as part of its grounds for denying Plaintiff's motion to remand, it is clear that Cognex has offered nothing to show that its claims are worth less than $75,000. Because Caron

need only show that the amount in controversy requirement is met by a preponderance of the evidence, any evidence that this case is worth more than $75,000 is sufficient to carry his burden.

> **B.    Plaintiff's Allegations make Evident that the Injunction it Seeks is Worth More than $75,000 to Cognex.**

Cognex is a large, multi-national corporation with annual revenues measured in hundreds of millions of dollars. According to the Cognex's 2003 annual report, Plaintiff has 27 offices around the world, including 8 in the United States.[5] Cognex's own website reflects revenues of $150,000,000 in 2003 and revenues of over $1,600,000,000 since the company's founding in 1981.[6] As of the date of this Opposition, Cognex had more than 45,000,000 shares of outstanding stock and a market value of approximately $1,200,000,000.[7]

In its Complaint, Plaintiff contends that, as a result of Defendant's alleged conduct, "Cognex has sustained and will continue to sustain irreparable injury and damage …" and that "Cognex has suffered and continues to suffer economic harm." Complaint ¶¶ 23-24, 28-29. Plaintiff has also claimed that, without the injunctive relief it seeks, "Cognex will suffer immediate and irreparable loss, injury and damage in that it will be deprived of the competitive advantage in the marketplace that it has gained by investing substantial amounts of its resources, human and financial." *Plaintiff's Memorandum in Support of Application for Preliminary Injunction* at 6. Plaintiff further claims that Caron's alleged conduct is a threat to Cognex's "tremendous trust, respect and goodwill with its customers," and that "the potential damage to be caused to Cognex … is palpable." *Id.* at 6, 12. Plaintiff has also submitted affidavits claiming

---

[5]    Cognex Corporation's 2003 Annual Report, p. 38. *See* www.cognex.com/pdf/investor/2003/companyinfo.pdf

[6]    *See* www.cognex.com/corporate/default.asp.

[7]    *See* quotes.nasdaq.com/asp/summaryquote.asp?symbol=CGNX%60&selected=CGNX%60 (last visited Nov. 28, 2004, reflecting 46,079,000 outstanding shares of Cognex Corporation at a market price of $25.92 for a market value of $1,194,367,680)

that, if Caron is allowed to work for a competitor, "Cognex would suffer great loss and damage." *Affidavit of Didier Lacroix*, ¶ 15, attached as Exhibit A to *Plaintiff's Memorandum in Support of Application for Preliminary Injunction*.

As noted above, Cognex's patently vague allegations regarding its damages provide little basis on which to precisely quantify the damages Plaintiff claims to have suffered.  However, Cognex's allegations provide a sufficient basis to conclude that it is more probable than not that the value of this case from Plaintiff's viewpoint exceeds the jurisdictional minimum.  It defies reason for Plaintiff to suggest that the "great loss and damage" it predicts will befall this $1.2 billion company in the form of "palpable" injury to its "tremendous" corporate goodwill is not likely to exceed $75,000, a sum representing roughly .006% of the value of the corporation.

### IV.   Conclusion.

For the foregoing reasons, Jean Caron respectfully requests that this Court <u>deny</u> Plaintiff's Motion to Remand.

                Respectfully submitted,
                JEAN CARON
                By his Attorney(s),

                /s/   Sally L. Adams
                Sally L. Adams (BBO # 629688)
                SEYFARTH SHAW LLP
                World Trade Center East
                Two Seaport Lane, Suite 300
                Boston, MA 02210-2028
                Telephone:    (617) 946-4800
                Telecopier:    (617) 946-4801

DATED:  December 10, 2004

-11-

## CERTIFICATE OF SERVICE

  I hereby certify that on December 10, 2004, a true copy of the above document was filed with the Court and served electronically upon the following:

> Jennifer A. Yelen, Esq.
> Perkins Smith & Cohen LLP
> One Beacon Street, 30th Floor
> Boston, MA 02108

             /s/   Sally L. Adams