UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COGNEX CORPORATION,<br>Plaintiff,<br><br>v.<br><br>JEAN CARON,<br>Defendant. | CIVIL ACTION NO. 04 12365 JLT |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO SHOW CAUSE AND FOR ORDER OF CIVIL CONTEMPT

The Plaintiff, Cognex Corporation ["Cognex"], submits this Memorandum in support of its request that this Court find the Defendant, Jean Caron ["Caron"], in Contempt for his admitted, willful and continued violations of a Preliminary Injunction, which expressly prohibits Caron from, inter alia, engaging in or accepting employment with any business competitive with Cognex, including but not limited to Euresys, S.A. ["Euresys"]. Euresys is a direct competitor of Cognex for which Caron has remained continuously employed through the present date.

### STATEMENT OF RELEVANT FACTS

Since its incorporation in Massachusetts in 1981, Cognex, along with its subsidiaries, divisions, and branches, has been engaged in the business of providing leading-edge machine vision technology to customers throughout the United States and the world.

In March 1998, Caron entered into an agreement with Cognex [the "Employee Agreement"], incident to his employment as a Vision Solutions Engineer with Cognex International, Inc., a wholly-owned subsidiary of Cognex with a branch office in Paris, France. The Employee Agreement also contains a provision prohibiting Caron for a two-year period after the termination of his employment with Cognex from becoming involved with or employed by businesses in competition with Cognex. The Employee Agreement further restricts Caron from

soliciting Cognex employees to leave Cognex's employ, and from using or divulging confidential and proprietary information entrusted to him by Cognex.

After executing the Employee Agreement, Caron was provided with access to effectively all of Cognex's existing programs. Caron attended at least two intense training sessions conducted at the Cognex headquarters in Natick, Massachusetts, and had significant, regular contact with Cognex employees in Natick. Caron received a high degree of supervision and support from Cognex executive and management personnel in Massachusetts, as well as comprehensive detailed information regarding Cognex's product, technology, customers, business methods and practices. In addition, he had access to confidential materials pertaining to the business of Cognex, its key technology, product development, its customers, business methods, pricing, and marketing strategy.

Caron terminated his employment with Cognex on or about June 16, 2003, effective September 19, 2003. See Affidavit of Jean Caron dated November 5, 2004 ["Caron Affidavit"], ¶ 25.[1] On October 1, 2003, Caron became employed by Euresys. Caron Affidavit, ¶¶ 30, 31. Euresys is a Belgian machine vision company, and a direct competitor of Cognex, particularly in Switzerland and France. Caron is employed as a Technical Services Manager with regard to machine vision engineering and products at Euresys, a position with substantially the same duties and responsibilities as the position he held with Cognex. Caron Affidavit, ¶ 31.

Cognex's and Euresys' businesses overlap in that both companies market to original equipment manufacturers ("OEM's") and system integrators. Both Cognex and Euresys have recently competed for business at Ismeca and Compar in Switzerland and at Europlacer in France.

Beginning in October 2003, and continuing to the present date, Caron has violated and continues to violate the express covenants in his Employee Agreement by:

(i) accepting and continuing his employment with Euresys following his employment with Cognex;

(ii) divulging, appropriating and using for his own personal gain confidential information obtained during the course of his employment with Cognex, including information pertaining to Cognex's trade secrets, technology, new product

---

[1] A copy of Caron's Affidavit, filed in connection with his Motion to Dismiss for Lack of Personal Jurisdiction, is included in Cognex's Appendix, filed contemporaneously herewith.

2

        development, training and sales methods, customer lists and information, pricing and marketing practices;

(iii)    competing with Cognex in the territory designated in the Employee Agreement; and

(iv)    soliciting customers of Cognex for the purpose and with the effect of diverting such customers from Cognex to Euresys.

## RELEVANT PROCEDURAL HISTORY

Cognex commenced an action against Caron in the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts, Middlesex County ["Middlesex Superior Court"] on August 2, 2004, seeking injunctive relief against Caron to enforce the restrictive covenants contained in the Employee Agreement. Also on August 2, 2004, Cognex obtained a Temporary Restraining Order against Caron, restraining and enjoining him from, inter alia, employment by a company in direct competition with Cognex, and, particularly, from employment with Euresys [the "Temporary Restraining Order"].

The Middlesex Superior Court extended the Temporary Restraining Order on August 11, 2004, and again on October 25, 2004, all without opposition from Caron. The October 25, 2004 extension of the Temporary Restraining Order expressly provides that the "Temporary Restraining Order issued on August 2, 2004, and extended on August 11, 2004, shall be extended for a period of two (2) weeks, until November 16, 2004, or until a hearing is conducted on Plaintiff's Application for Preliminary Injunction, whichever is later." (Emphasis supplied). A hearing on the Plaintiff's Application for Preliminary Injunction was scheduled by the Court for November 16, 2004, and Caron was given notice of the date of the hearing.[2] The extension of the Temporary Restraining Order beyond twenty days until a hearing could be conducted is permissible under Massachusetts law. See Samuels Pharmacy, Inc. v. Board of Registration in Pharmacy, 390 Mass. 583, 585-586 (1983) (Superior Court issued a temporary restraining order which was "extended indefinitely, until further order of the court") ["Samuels Pharmacy"]; Norton Co. v. Hess, 14

---

[2]It is undisputed that the Temporary Restraining Order (dated August 2, 2004) and the August 11, 2004 extension of the Order were served on Caron in hand on October 8, 2004. Caron was also served with a copy of the second

Mass. L. Rep. 162 at 1-2 (Mass. Sup. Ct. 2001) (ex parte temporary restraining order obtained by employer against former employee to enforce a non-compete agreement was extended by the court for two months until the date of the hearing) ["Norton"].[3]

Eight days prior to the scheduled Preliminary Injunction hearing in the Middlesex Superior Court, Caron, through his counsel, filed a Notice of Removal. Shortly thereafter, Cognex filed a Motion to Remand, which was denied by this Court on January 3, 2005. On or about November 16, 2004, Caron filed a Motion to Dismiss, claiming lack of personal jurisdiction, forum non conveniens, and insufficiency of service of process. Caron's Motion was denied on January 3, 2005 as well.

According to the Federal Rules and related case law as set forth below, the Temporary Restraining Order, given its duration, must be treated as a Preliminary Injunction [the "Preliminary Injunction"]. Caron's conduct, including but not limited to his continued employment at Euresys, constitutes a willful violation of the Preliminary Injunction. Caron should, therefore, be adjudged in Contempt.

## ARGUMENT

I.    Under Federal Law, The Temporary Restraining Order Must Be Treated As A Preliminary Injunction

Under Rule 65(b), a temporary restraining order may not last for more than twenty days, unless the restrained party consents. Fed. R. Civ. P. 65(b). If a temporary restraining order is extended for more than twenty days, the court must treat it as a preliminary injunction. Sampson v. Murray, 415 U.S. 61, 86 (1974) ("a temporary order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction") ["Sampson"]; Melanson v. John J. Duane Co., 605 F.2d 31, 33 (1st Cir. 1979) (a temporary restraining order continued for three years "has

---

extended Temporary Restraining Order (dated October 25, 2004), notifying him of the hearing on November 16, 2004.

[3] Under Massachusetts law, extensions beyond 20 days are permissible as long as the extensions are for a "reasonable time." See Childs v. Sherman, 351 Mass. 450, 456 (two year extension of restraining order deemed reasonable).

4

to be treated for what it is, a preliminary injunction, not what it was labeled") ["Melanson"].[4] The Temporary Restraining Order in this case must be treated as a preliminary injunction.

Although this case (and the Temporary Restraining Order) originated in the state court, once removed, this matter is "governed fully by the Federal Rules" and shall be "treated no differently than if they had originated in a federal forum." Resolution Trust Corp. v. North Bridge Associates, 22 F.3d 1198, 1201 n. 2 (1st Cir. 1994); see Fed. R. Civ. P. 81(c) (the Federal Rules "apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal"). Under Federal law, "all injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. §1450.[5]

Here, the Middlesex Superior Court entered a Temporary Restraining Order, which was extended twice and, consequently, spanned a period of time in excess of the twenty-day period provided for under Federal Rule 65(b). Pursuant to its express terms, the Temporary Restraining

---

[4] The reason a court must treat a temporary restraining order as a preliminary injunction if it is extended beyond 20 days is to address the following two concerns: (1) temporary restraining orders that are not "temporary" (i.e. last more than 20 days) do not conform to the express language of the Federal Rules, and are by their very duration not temporary orders, but rather injunctions; and, (2) temporary restraining orders are not subject to appeal. Given the nature of the relief provided in a temporary restraining order, it is necessary to treat orders that last longer than 20 days as preliminary injunctions in order to protect defendants by providing the right to an appeal. On appeal, a court is empowered, for example, to strike down "temporary restraining orders" that last more than 20 days if the order is not specific and clear--as is required of preliminary injunctions. They can do this only because such temporary restraining orders are treated as preliminary injunctions.

[5] In Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70, Etc., 415 U.S. 423, 435-436 (1974), ["Granny Goose"], a case originating in California, the Supreme Court set forth a "rule" intended to limit the scope of 28 U.S.C. §1450. Consistent with the concurring opinion by Justice Rehnquist (who, notably, authored the majority opinion in Sampson, supra, decided just one month prior to Granny Goose), this court should decline to follow this restrictive rule, which is contrary to the express language of 28 U.S.C. §1450. See Granny Goose, 415 U.S. at 447. This rule should also be rejected because it treats removed cases differently in direct contravention of the Federal Rules, statutory law, and well-established precedent affirmed in cases decided both before and after Granny Goose. See Office of Personnel Management v. American Federation of Government Employees, 473 U.S. 1301, 1304 (1985); Sampson, supra; Melanson, supra. Further, the Granny Goose case is readily distinguishable from the case at hand. In Granny Goose, the plaintiff (not the defendant) removed the action to federal court. Also, the state court restraining order at issue in Granny Goose was to expire by its terms on a date certain, May 26, 1970 (whereas here, the injunction did not expire). Nor was it permissible under California law, as it is under Massachusetts law, to extend a temporary restraining order beyond twenty days. See Samuels Pharmacy, 390 Mass. at 585-586; Norton, 14 Mass. L. Rep. at 1-2. Finally, assuming, arguendo, that this Court determines that the rule established by Granny Goose is applicable, this alone would not protect Caron from a Contempt Order. Even under the most restrictive reading of the law, Caron was in violation of the Temporary Restraining Order for at least six weeks (from October 8, 2004, when he was served in hand with a copy of the Temporary Restraining Order, through November 18, 2004, ten days after Caron removed this action from state court), and should be held in Contempt.

5

Order was to remain in effect until November 16, 2004 "or until a hearing is conducted on Plaintiff's Application for Preliminary Injunction, whichever is later." To date, Caron has not filed a motion to modify or dissolve the injunction. At the time of removal, no hearing had taken place, and, accordingly, the Temporary Restraining Order had not expired. See Virzi Subaru, Inc. v. Subaru of New England, Inc., 742 F.2d 677, 680 (1st Cir. 1984) (the district court entered a temporary restraining order "pending a hearing and decision on a Preliminary Injunction." No further action was taken with regard to the temporary restraining order, which remained in effect for three years in the district court); see also Norton, 14 Mass. L. Rep. at 1-2 (temporary restraining order extended for two months). It is clear that under Federal law, the Temporary Restraining Order in this case has become a Preliminary Injunction. See Sampson, 415 U.S. at 86; Melanson, 605 F.2d at 33.

Furthermore, both state and federal law have similar standards for granting both temporary restraining orders and preliminary injunctions. Specifically, in entering the original Temporary Restraining Order, the Middlesex Superior Court determined that Cognex would suffer immediate and irreparable harm if an injunction did not issue; the harm contemplated by Cognex included Caron's dissemination of confidential product information, new product developments, and customer information, and a loss of Cognex's goodwill and competitive advantage in the marketplace. See Mass. R. Civ. P. 65(a); see also Middlesex Superior Court pleadings, including Cognex's Motion for Ex Parte Temporary Restraining Order and other relevant state court pleadings, included in Cognex's Appendix. In addition, based on the parties' written agreement, and Caron's admitted violations thereof, the state court reasonably determined that Cognex was likely to succeed on the merits of its claims. Under the circumstances, the balance of the harms plainly favored the entry of an injunction against Caron. See e.g. Massachusetts Coalition of Citizens v. Civil Defense Agency, 649 F.2d 71, 74 (1st Cir. 1981) (under Federal law, in order to obtain an injunction, the moving party must establish four criteria: its likelihood of success on the merits; irreparable harm it will suffer if injunction not granted; balance between the harm to the

moving party and the to the defendant by granting the injunction; and, the public interest); <u>Becker v. FEC</u>, 112 F. Supp. 2d 172, 181 (D. Mass. 2000) (same).

Finally, the state court Temporary Restraining Order complies with Federal Rule 65(d) in that it is specific in its terms and clearly delineates the precise conduct from which Caron is restrained. The first paragraph of the Temporary Restraining Order expressly provides that Caron is "restrained <u>and enjoined</u> from: (1) <u>engaging in or accepting employment with any business competitive with Cognex, including but not limited to Euresys S.A.</u>, in violation of his contract with Cognex, and from soliciting any customers of Cognex; (2) divulging, appropriating, or using to his own gain any confidential information obtained from Cognex; (3) violating in any manner the agreement between the Plaintiff and Defendant; and, (4) retaining any proprietary technology and equipment and confidential information belonging to Plaintiff." (Emphasis supplied). A copy of the Temporary Restraining Order is included in Cognex's Appendix.

Based on the foregoing, the Temporary Restraining Order must be treated as a Preliminary Injunction by this Court and is presently in effect and enforceable. <u>See</u> <u>Sampson</u>, 415 U.S. at 86; <u>Melanson</u>, 605 F.2d at 33.

II.   <u>Caron's Flagrant Violations Of The Preliminary Injunction Warrant Entry Of A Contempt Order, Including Sanctions For Caron's Willful Noncompliance</u>

"The power to punish for contempt is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently, to the due administration of justice." <u>Bessette v. W.B. Conkey Co.</u>, 194 U.S. 324, 327 (1904) (quotations omitted). "Civil contempt proceedings are for the purpose of coercing compliance with the orders of the court . . . . [C]oercion may be achieved by imprisonment of the contemnor until he purges himself of the contempt and/or by a prospective, conditional fine." <u>United States v. Professional Air Traffic Controllers Organization</u>, 678 F.2d 1, 4 (1st Cir. 1982) (citations omitted). The fact that Caron filed a motion to dismiss in which he questioned the district court's jurisdiction over this proceeding did not relieve him of the obligation to comply with the Preliminary Injunction. <u>See</u> <u>U.S. v. United Mine Workers of America</u>, 330

7

U.S. 258, 292-293 (1947) (temporary restraining order must be obeyed during the period in which the court determines whether it has jurisdiction). When a defendant makes a "private determination of the law" by presuming the court does not have jurisdiction, he acts at his own peril, and any "disobedience is punishable as contempt." Id. at 293.

A finding of contempt is appropriate under the facts of this case. Caron flagrantly, willfully and repeatedly violated the initial state court Temporary Restraining Order, and continues to violate the Preliminary Injunction. By his own admission, and despite actual notice of the clear and unambiguous injunction, Caron remained employed with Euresys -- a direct Cognex competitor. Caron should also be held in contempt for:

(i) competing with Cognex in the territory designated in the Employee Agreement; and

(ii) soliciting customers of Cognex for the purpose and with the effect of diverting such customers from Cognex to Euresys.

Caron's abject refusal to abide by the specific terms of the Preliminary Injunction warrants a finding of contempt, and an award of sanctions, including but not limited to a fine of $1,000.00 per day until such time as Caron complies with the terms of the Preliminary Injunction, and an award of reasonable costs and attorneys' fees incurred by Cognex in connection with the contempt proceeding. This is a just and reasonable result designed to secure Caron's compliance with the Preliminary Injunction. See Goya Foods, Inc. v. Wallack Management Co., 290 F.3d 63, 75-80 (1st Cir. 2002) (district court acted within its discretion when it imposed a sanction of $4.6 million for civil contempt on the purchaser of an apartment building, the cooperative housing association, and the apartment building's managing agent for a surreptitious sale in violation of the court's order); see also Dystar Corp. v. Canto, 1 F. Supp. 2d 48, 58-60 (D.Mass. 1997) (award of attorneys' fees proper in a civil contempt proceeding against dye distributing firm for its willful violation of court's preliminary injunction).

## CONCLUSION

For the reasons stated herein, Plaintiff, Cognex Corporation's, Motion to Show Cause and For Order of Civil Contempt should be allowed, and the relief requested therein granted.

Plaintiff,
COGNEX CORPORATION,
By its attorneys,

/s/ James E. O'Connell, Jr.
James E. O'Connell, Jr., BBO# 376475
Jennifer A. Yelen, BBO# 565205
PERKINS SMITH & COHEN LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 854-4000

Dated: January 14, 2005
13271-11 MemoContempt.doc