Exhibit A

# Exhibit A

*tendanciaires en droit du travail : Dr. social 2003, 1035. — Ph. WAQUET, Les libertés dans l'entreprise : Dr. social 2000, 1051.*

*se : RJS 2000, 335. — Le pouvoir de direction et les libertés des salariés : Dr. social 2000, 1051.*

**4) Ouverture de l'armoire individuelle du salarié.** — L'employeur ne peut procéder à l'ouverture de l'armoire individuelle d'un salarié que dans les cas et aux conditions prévues par le règlement intérieur et en présence de l'intéressé ou celui-ci prévenu. » (Soc. 11 déc. 2001 : RJS 3/02, n. 256, où la Cour de cassation relève, de surcroît, que la fouille en l'espèce effectuée, hors la présence de l'intéressé, n'était justifiée par aucun risque ou événement particulier.).

**5) Secret de la correspondance.** — « Le salarié a droit, même au temps et au lieu de travail, au respect de l'intimité de sa vie privée ; celle-ci implique en particulier le secret des correspondances ; l'employeur ne peut dès lors sans violation de cette liberté fondamentale prendre connaissance des messages personnels émis par le salarié et reçus par lui grâce à un outil informatique mis à sa disposition pour son travail et ceci même au cas où l'employeur aurait interdit une utilisation non professionnelle de l'ordinateur ». (Soc. 2 oct. 2001 : Dr. social 12/01, n. 1394 ; Dr. social 2001, 915, obs. J.-E. Ray. — Rapp. Paris, 17 déc. 2001 : RJS 3/02, n. 257).

**6) Domicile.** — « Le salarié n'est tenu ni d'accepter de travailler à son domicile, ni d'y installer ses dossiers et ses instruments de travail. (Soc. 2 oct. 2001 : RJS 12/01, n. 1399 ; Dr. social 2001, 920 ; Dr. social 2001, 1039, obs. J.-E. Ray).

**liberté d'expression.** — « Sauf abus, le salarié jouit, dans l'entreprise et en dehors de celle-ci, de sa liberté d'expression ; il ne peut être apporté à celle-ci que des restrictions justifiées par la nature de la tâche à accomplir et proportionnées au but recherché. » (Soc. 14 déc. 1999, comm. 85 ; Dr. social 2000, J.-E. Ray, note J.-E. Ray).

**liberté de déplacement.** — Une entreprise concernée par des alertes à la bombe fautivement marquée par une série parfaitement exagérée, après avoir mis en cause d'entreprise et le CHSCT, peut, dans le cercle restreint du comité d'entreprise, dès lors, critiquer la nouvelle organisation, d'elle-même, libertés publiques, individuelles et des exigences de sécurité, justifiée par des circonstances précises et des exigences de sécurité, jusqu'à la fouille des sacs (Soc. 3 avril 2001, 720).

**7) — Al. 1 et 2, Abrogés. L. n. 2000-37, 19 janv. 2002, art. 34-1**

**8) — L. n. 11 mars 1997, art. 2] Celui qui a eu recours aux services d'une personne (L. n. 2000, art. 34-II) « physique ou morale immatriculée au registre du commerce et des sociétés, au répertoire des métiers, au registre des agents commerciaux ou, pour le recouvrement des cotisations d'allocations familiales, auprès des unions pour le recouvrement des cotisations de sécurité sociale et d'allocations familiales » dans des conditions qui permettent d'établir l'existence d'un régime de protection sociale ainsi qu'aux caisses de congés payés mentionnées à l'article L. 223-16 au titre de la période d'activité correspondant à l'exécution de ce contrat, des prescriptions applicables à ces cotisations et contributions.

**responsabilité contractuelle.** — L'engagement d'exécution de bonne foi du contrat de travail (Soc. 4 juin 2002 : RJS 8-9/02, n. 912).

**salarié** ; il suffit qu'il ait manqué à son obligation d'exécution de bonne foi du contrat de travail (Soc. 4 juin 2002 : RJS 8-9/02, n. 912).

**contractuelle.** — Le contrat de travail est exécuté de bonne foi.

---

## CHAPITRE I. — DISPOSITIONS GÉNÉRALES

**Art. L. 121-1.** — Le contrat de travail est soumis aux règles du droit commun. Il peut être établi dans les formes qu'il convient aux parties contractantes d'adopter.

[L. n. 94-665, 4 août 1994, art. 8] « Le contrat de travail constaté par écrit est rédigé en français.

« Lorsque l'emploi qui fait l'objet du contrat ne peut être désigné que par un terme étranger sans correspondant en français, le contrat de travail doit comporter une explication en français du terme étranger.

« Lorsque le salarié est étranger et le contrat constaté par écrit, une traduction du contrat est rédigée, à la demande du salarié, dans la langue de ce dernier. Les deux textes font également foi en justice. En cas de discordance entre les deux textes, seul le texte rédigé dans la langue du salarié étranger peut être invoqué contre ce dernier.

« L'employeur ne pourra se prévaloir à l'encontre du salarié auquel elles feraient grief des clauses d'un contrat de travail conclu en violation du présent article ».

Voir, Circ. 19 mars 1993 concernant l'application de la loi n. 94-665 du 4 août 1994 relative à l'emploi de la langue française : JO 20 mars, p. 4258. — G. LYON-CAEN, L'état des sources du droit du travail, agitations et menaces : Dr. social 2001, 1031. — C. RADÉ, La figure du contrat dans le rapport de travail : Dr. social 2001, 802. — M. VERICEL, La formalisme dans le contrat de travail : Dr. social 1993, 818.

### SOMMAIRE

Généralités : 1 à 6.
I. — Critères du contrat de travail : 7 à 46.
II. — Nullité du contrat de travail : 47 à 62.
III. — Contrat de travail et contrat de mandat : 63 à 65.
IV. — Contrat de travail et contrat de société : 66 à 68.
V. — Formation du contrat de travail : 69 à 80.
VI. — Embauche et vie privée : 81 à 97.
VII. — Engagement à l'essai : 98 à 160.
VIII. — Preuve du contrat de travail : 161 à 164.
IX. — Interprétation du contrat de travail : 165 et 166.
X. — Clause de non-concurrence : 167 à 250.
XI. — Concurrence déloyale : 251 à 266.

XII. — Cumul d'un contrat de travail et d'un mandat social : 267 à 305.
XIII. — Détermination de l'employeur : 306 à 315.
XIV. — Catégories professionnelles : 316 à 323.
XV. — Affectation du salarié à un poste de travail : 324 à 330.
XVI. — Ancienneté du salarié : 331 à 334.
XVII. — Avancement : 335 à 339.
XVIII. — Détachement : 340 à 346.
XIX. — Maladie : 347 à 405.
XX. — Modification du contrat de travail : 406 à 497.
XXI. — Retraite : V. infra, art. L. 122-14-12 et s.
XXII. — Usages : 498 à 538.
XXIII. — Relations internationales de travail : 539 à 582.

### GÉNÉRALITÉS

**1) Application de la norme la plus favorable.** — Constitue un principe fondamental en droit du travail, celui « selon lequel, en cas de conflits de normes, c'est la plus favorable aux salariés qui doit recevoir application ». (Soc. 17 juill. 1996, deux arrêts : Dr. trav. 1996, n. 8-9, p. 4, § 357. — Soc. 8 oct. 1996 : Dr. trav. 1996, n. 11, p. 5, § 452. — Soc. 27 mars 2001 : RJS 6/01, n. 801).

**2) Application du statut collectif.** — Le contrat de travail entraîne l'application du statut collectif en vigueur dans l'entreprise prise. (Soc. 5 juin 2001 : RJS B-9/01, n. 1102).

**3) Le salarié ne peut renoncer dans son contrat de travail à une disposition du statut collectif qui lui est plus favorable ». (Soc. 5 juin 2003, préc., à propos d'un document interne qui constituait un engagement unilatéral de l'employeur).

ployeur guinéen pour un travail à effectuer en ce pays, n'était pas soumise aux dispositions des lois françaises de conflit. La « travail conclu ... à l'étranger » - et de pour toutes contestations nées de l'interprétation ou de l'exécution du contrat. L'arrêt attaqué a jugement déduit que le conseil de prud'hommes de Paris était incompétent pour connaître de la demande en paiement de diverses sommes formée par le salarié, à l'expiration du contrat, contre son ancien employeur (Ch. sociale, 28 juin 1974 ; *JCP 74, éd. CI, II, 11639*, note G. Lyon-Caen ; *Dr. social 1975, 458*, 1re esp., obs. H.-J. Lucas).

577) **Interprétation de la clause attributive de juridiction**. — N'exclut pas la compétence de la juridiction française du travail la clause attributive de juridiction dont les effets sont limités aux litiges nés sur le territoire sans lien avec le juge dont le territoire français (Soc. 22 avril 1992 ; *Dr. trav. 1992, n. 7, p. 18, § 373*).

578) **Clause compromissoire**. — La clause compromissoire insérée dans un contrat de travail international n'est pas opposable au salarié qui a saisi régulièrement la juridiction française compétente en vertu des règles applicables, peu important la loi régissant le contrat de travail. (Soc. 16 févr. 1999 ; *RJS 5/99, n. 720* – Soc. 4 mai 1999 ; *TPS 1999, comm. 376*).

2° Normes particulières

a) Absence de clause attributive de juridiction

579) **Convention de Bruxelles**. — La notion de « lieu... où le travailleur accomplit habituellement son travail », au sens de l'article 5, point 1, de la Convention de Bruxelles du 27 septembre 1968 doit être entendue comme « celui où le travailleur a établi le centre effectif de ses activités professionnelles. Pour la détermination concrète de ce lieu, il convient de prendre en considération la circonstance que le travailleur accomplit la majeure partie de son temps de travail dans un des États contractants où il a un bureau à partir duquel il organise ses activités pour le compte de son employeur et où il retourne après chaque voyage professionnel à l'étranger ». (CJCE 9 janv. 1997 : *Rev. crit. dr. int. privé 1997, 337*, obs. H. Gaudemet-Tallon. – *Adde*, Soc. 15 oct. 2002 ; *BJS 12/02, n. 1427*).

b) *Présence d'une clause attributive de juridiction*

580) **Convention de Bruxelles**. — Les articles 17 et 5-1 de la Convention de Bruxelles doivent être interprétés en ce sens que dans les actions judiciaires introduites après l'entrée en vigueur de la Convention, les clauses attributives de juridiction, stipulées dans les contrats de travail conclus antérieurement à cette entrée en vigueur, doivent être tenues pour valables, même dans les cas où elles auraient été considérées comme nulles selon les règles nationales en vigueur au moment de la conclusion du contrat. (CJCE 13 nov. 1979 ; *D. 1980, 543*, note I. Mestre. – *Adde*, Soc. 2 avril 1981 ; *JCP 1981, I'63. –* Rapp. Versailles, 8 nov. 1990 ; *Juris-social 21, éd. G. II, 23672*, note A. Martin-Serf).

581) Quelles que soient la nature du contrat liant les parties et ses modalités d'exécution, la clause attributive de juridiction en faveur d'un tribunal italien insérée dans un contrat conclu entre un citoyen français et une société établie en Italie est valable au regard des dispositions de l'article 17 de la Convention de Bruxelles du 27 septembre 1968 (Soc. 7 janv. 1992 ; *Dr. trav. 1992, n. 4, p. 16, § 219*).

582) **Convention de Bruxelles et de Saint-Sébastien**. — Aux termes de l'article 17, dernier alinéa, de la Convention de Bruxelles, modifié par la Convention de Saint-Sébastien, en matière de contrats individuels de travail, la convention attributive de juridiction ne produit ses effets que si elle est postérieure à la naissance du différend ou si le travailleur l'invoque pour saisir d'autres tribunaux que ce lui du défendeur ou celui indiqué à l'article 5, point 1 (Soc. 14 nov. 2000 ; *RJS 3/01, n. 331*).

583) Selon l'article 29-1 de la Convention de Bruxelles, cette dernière est applicable aux actions judiciaires intentées postérieurement à son entrée en vigueur dans l'État d'origine, soit, en France, le 1er février 1991 (Soc. 14 nov. 2000, préc.).

584) **Salarié mis à la disposition d'une filiale étrangère**. — Sur le licenciement d'un salarié par la filiale étrangère à la disposition de laquelle il avait été mis, V. *infra*, n. L. 122-14-8.

Art. L. 121-2. — Le contrat de travail est exempt de timbre et d'enregistrement.

Art. L. 121-3 (*L. n. 75-493, 11 juin 1975, codification*). — Est nulle et de nul effet toute clause attributive de juridiction incluse dans un contrat de travail.

1) **Connexité**. — La simple connexité ne peut justifier que soit écartée et privée d'une clause attributive de juridiction (Soc. 26 juin 1971 ; *Dr. trav. 1991, n. 8-9, p. 16, § 373*).

2) Sur les clauses attributives de juridiction, V. aussi *infra*, notes sous art. L. 511-1 et R. 517-1.

Art. L. 121-4. — On ne peut engager ses services qu'à temps ou pour une entreprise déterminée.

Art. L. 121-5 (*Ord. n. 82-130, 5 févr. 1982, art. 1*). — Le contrat de travail est conclu sans détermination de durée. Toutefois, dans les cas et aux conditions fixés du chapitre II du présent titre, il peut comporter un terme fixé avec précision dès sa conclusion ou résultant de la réalisation de l'objet pour lequel il est conclu.

Art. L. 121-6 (*L. n. 92-1446, 31 déc. 1992, art. 25-I*). — Les informations demandées, sous quelque forme que ce soit, au candidat à un emploi ou à un salarié ne peuvent avoir comme finalité que d'apprécier sa capacité à occuper l'emploi proposé ou ses aptitudes professionnelles.

Ces informations doivent présenter un lien direct et nécessaire avec l'emploi proposé ou avec l'évaluation des aptitudes professionnelles. Le candidat à un emploi ou le salarié est tenu d'y répondre de bonne foi.

Exhibit B

# Exhibit B

 

## Affidavit of Accuracy

This is to certify the following document: **Article L.121-3 and Article L 121-1 from the Code of Travail**, has been translated from French into English by staff members of TransPerfect Translations familiar with both the French and English languages and is to the best of our knowledge, ability and belief, a true and accurate translation.

*Leigh Wellman*

_____
Leigh Wellman
For TransPerfect Translations


Sworn to before me this
Monday, March 28, 2005

*Susan Christe*

_____
Signature, Notary Public

## CHAPTER I. – GENERAL PROVISIONS

Art. L. 121-1. – The employment contract is subject to common law rules. It may be stated in the forms chosen by the contracting parties.

*(L. No. 94-665, August 4, 1994, art. 8)* "The employment contract stated in writing is drawn up in French.

"When the employment covered by the contract can be described only by a foreign term without equivalent in French, the employment contract must provide an explanation in French of the foreign term.

"When the employer is a foreigner and the contract is stated in writing, a translation of the contract is drawn up, at the request of the employee, in the latter's language. The two texts are equally enforceable in court. In the event of disagreement between the two texts, only the text drawn up in the foreign employee's language may be enforced against the latter.

"The employer may not enforce against the employee the clauses of an employment contract executed in violation of this article when they are against the employee's interest."

See Circular of March 19, 1996 on the application of law No. 94-665 of August 4, 1994 concerning the use of the French language: *JO* March 20, p. 4258. – G. LYON-CAEN, *L'état des sources du droit du travail, agitations et menaces* [The status of the sources of labor law: unrest and threats]: *Dr. social* 2001, 1031. – C. RADÉ, *La figure du contrat dans le rapport de travail* [The concept of contract in the labor relationship]: *Dr. social* 2001, 802. – M. VERICEL, *Le formalisme dans le contrat de travail* [Formalism in the labor contract]: *Dr. social* 1993, 818.

**Art. L. 121-3** *(D. No. 75-493, June 11, 1975, codification).* – Any choice of jurisdiction clause included in an employment contract is null and void.

    1) ***Close connection.*** – The simple close connection cannot justify the elimination and voiding of a choice of jurisdiction clause ([illegible] June 26, [illegible], No. 8-9, p. 16, § 374)

    2. On choice of jurisdiction clauses, see also *infra*, notes under art. L. 511-1 and R. 517-3.

Exhibit C

# Exhibit C

## DECLARATION DE MONSIEUR JEAN CARON

Je soussigné, Jean Caron, déclare sur parole, et à ma meilleure connaissance que :

1. Je suis âgé de plus de dix-huit (18) ans, et je suis conscient de ce que représente une déclaration sur parole.

2. Je suis de nationalité française.

3. Ma langue maternelle est le français.

4. Il m'a été rapporté que Cognex Corporation avait soulevé certaines interrogations au sujet de mes déclarations précédentes, et plus particulièrement leur version anglaise, en ce que Cognex prétend que la version française de ma déclaration affirme que je ne parle pas l'anglais alors que la version traduite énonce que je ne parle, lis ni écris l'anglais.

5. Je souhaite préciser que je ne lis pas et que je ne lisais, écrivais, parlais ni ne comprenais couramment l'anglais. Dans ma déclaration du 5 novembre 2004, j'ai utilisé l'expression « *je ne parle pas l'anglais couramment* » dans son sens le plus large, qui dans sa traduction littérale pourrait être comprise comme « je ne parle pas l'anglais » alors qu'il s'agit d'une expression communément utilisée allant au delà d'une incapacité de parler une langue pour inclure l'incapacité de lire, écrire et comprendre la langue.

6. Si j'ai quelque connaissance de terminologie technique anglaise, habituellement utilisée dans le domaine de la vision linéaire industrielle, ma connaissance de la langue anglaise (en ce compris ma capacité de lire, écrire, parler et comprendre la langue anglaise) en 1998, était très réduite, et l'est toujours, à tel point que mes supérieurs hiérarchiques chez Cognex m'avait fait la remarque en 2002. Je n'ai pas compris l'anglais

complexe contenu dans la « Convention en Langue Anglaise », ni celui utilisé dans le Stock Option Agreements dont ma signature avait été requise par mon précédent employeur.

Signé en ce 18 mars 2005, sous peine de parjure.

_____
Jean CARON

Exhibit D

Exhibit D



## Affidavit of Accuracy

This is to certify the following document: **Declaration of Mr. Jean Caron, March 18, 2005**, has been translated from French into English by staff members of TransPerfect Translations familiar with both the French and English languages and is to the best of our knowledge, ability and belief, a true and accurate translation.

*Leigh Wellman*
_____
Leigh Wellman
For TransPerfect Translations


Sworn to before me this
Wednesday, March 23, 2005

*Susan Chester*
_____
Signature, Notary Public

## AFFIDAVIT OF MR. JEAN CARON

I, the undersigned, Jean Caron, declare on my honor and to my best knowledge and belief that:

1. I am over eighteen (18) years of age and I am aware of what a declaration on honor represents.

2. I am of French nationality.

3. My mother tongue is French.

4. It was reported to me that Cognex Corporation had raised certain questions about my previous declarations, and more particularly their English version, in the sense that Cognex claims that the French version of my declaration affirms that I do not speak English while the translated version states that I do not speak, read, or write English.

5. I wish to specify that I do not and did not read, write, speak, or understand English fluently. In my declaration of November 5, 2004, I used the expression "*je ne parle pas l'anglais couramment*" in its broadest sense which, in literal translation, could be understood as "I do not speak English" while this is a commonly used expression going beyond the incapacity of speaking a language, in order to include the incapacity of reading, writing, and understanding the language.

6. Although I have some knowledge of English technical terminology currently used in the field of industrial linear vision, my knowledge of the English language (including my capacity to read, write, speak, and understand the English language) in 1998 was very reduced and still is, to the point that my hierarchic superior at Cognex mentioned it to me in 2002. I did not understand the

-2-

complex English content in the "Agreement in the English Language," or that used in the Stock Option Agreements for which my signature was required by my previous employer.

Signed today, March 18, 2005, under penalty of perjury.

[signature]

Jean CARON

-2-