# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COGNEX CORPORATION </br></br> Plaintiff, </br></br> v. </br></br> JEAN CARON </br></br> Defendant. | ) ) ) ) ) ) CIVIL ACTION NO.  04-12365 JLT ) ) ) ) ) ) ) |

### DEFENDANT'S OPPOSITION
### TO PLAINTIFF'S APPLICATION FOR
### <u>PRELIMINARY INJUNCTION</u>

Defendant Jean Caron ("Mr. Caron") hereby <u>opposes</u>[1] plaintiff Cognex Corporation's ("Cognex" or "Plaintiff") Application for Preliminary Injunction ("Plaintiff's Application") on the grounds that:

(1)   Plaintiff cannot show that it will suffer any significant risk of irreparable harm absent an injunction; and

(2)    Plaintiff cannot show that it is substantially likely to succeed on the merits of its claims.

For these reasons and as more fully set forth below, Plaintiff's Application should be denied in its entirety.

---

[1]   By submitting this Opposition, Mr. Caron specifically reserves and does not waive his position that this Court lacks jurisdiction over his person and that service of process was insufficient.

BO1 15721796

## I.      BACKGROUND.

Mr. Caron is a French citizen who was employed as of March 16, 1998 in a suburb of Paris, France, by Cognex International, Inc. ("Cognex International"), a French-based, wholly owned subsidiary of Cognex.  Complaint ¶¶ 7, 9; *see* Affidavit of Jean Caron and certified English translation ("Caron Aff.") ¶¶ 2, 8, submitted with Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.  Cognex International required Mr. Caron to sign a "standard form" document with Cognex (which is not his employer), written in English (a violation of French law, *see* French Labor Code, Article L.121-1(2)) and captioned "Employee Invention, Non-Disclosure and Non-Competition Agreement" (the "English Agreement"), which purports to restrict Mr. Caron's post-employment activities for two years (also contrary to French law).

Mr. Caron resigned his employment with Cognex on or about June 16, 2003, effective September 19, 2003.  Complaint ¶ 16; Caron Aff. ¶ 25.  On September 19, 2003, Cognex International provided Mr. Caron with a Certificat du Travail stating that he left the company that day "free of all duties and obligations."  Caron Aff. ¶ 28.  Mr. Caron subsequently went to work for Euresys S.A. ("Euresys"), an alleged competitor located in Belgium.  Complaint ¶¶ 17-18.

Cognex knew by May 2004 at the latest that Mr. Caron was working for Euresys.  Neither Cognex nor Cognex International gave Mr. Caron any indication prior to initiating this lawsuit that it believed his ability to accept other employment was in any way restricted.  Caron Aff. ¶ 29.  It was not until August 2, 2004, nearly three months after confirming that Mr. Caron was working for Euresys, that Cognex filed suit against Mr. Caron in the Massachusetts Superior Court (the "Superior Court"), alleging that, as a result of his employment with Euresys, Mr. Caron "has violated and continues to violate the express and implied covenants" in the English

Agreement. Complaint ¶¶ 20, 22, 27. The Superior Court issued an *ex parte* Temporary Restraining Order (the "*Ex Parte* Order"), without any findings concerning, or requirement of, a bond. On August 11, 2004 the Superior Court purported to extend the *Ex Parte* Order; the extension necessarily was limited to a total of twenty days, or until August 22, 2004, by the express operation of Rule 65(a). *Sampson* v. *Murray*, 415 U.S. 61, 88 n.58 (1974); *Granny Goose Foods, Inc.* v. *Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 445 (1974) ("… a party against whom a restraining order has issued may reasonably assume that the order has expired within the time limits imposed by Rules 65…"). On November 8, 2004, Mr. Caron removed the case to this Court on the basis of alienage diversity jurisdiction. Cognex has taken no steps since August 22, 2004 to seek any order for injunctive relief against Mr. Caron.

Plaintiff now seeks an injunction, which if enforceable in Belgium, would put Mr. Caron out of work and effectively prohibit Mr. Caron from working in his professional field for an indeterminate period of time; prevent him from using or disclosing undetermined "confidential information" (Mr. Caron denies that he has or will use or disclose any confidential information belonging to Cognex); and require him to return undetermined "proprietary technology and equipment and confidential information belonging to Plaintiff" (Mr. Caron denies that he has retained any proprietary technology and equipment or confidential information belonging to Cognex).

## II.     ARGUMENT.

The criteria for the issuance of preliminary injunctive relief in this diversity case are well established. Plaintiff has the burden of establishing that: (1) it has exhibited a likelihood of success on the merits; (2) it will suffer irreparable injury if the injunction is not granted; (3) such injury outweighs any harm which granting injunctive relief would

3

inflict on the defendant; and in appropriate cases (4) that the public interest will not be adversely affected by the granting of the injunction. *Packaging Indus. Group, Inc. v. Cheney*, 380 Mass. 609, 616-617 (1980).

A.  **PLAINTIFF CANNOT SHOW IRREPARABLE HARM.**

Irreparable harm is a loss of rights that cannot be vindicated should the party seeking an injunction prevail after a full hearing on the merits. *Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue*, 406 Mass. 701, 710 (1990). Here, Plaintiff cannot show irreparable harm because it has delayed without justification in seeking to enforce any rights it claims to have under the English Agreement.

Plaintiff never informed Mr. Caron that it believed he was subject to any post-employment restrictions. To the contrary, Plaintiff issued Mr. Caron a written certification on his last day of employment with Cognex International, stating that he left the company "free of all duties and obligations." Further, by its own admission, Plaintiff waited for nearly three months after it learned that Mr. Caron was working for Euresys before it made any effort to obtain injunctive relief. And after the *Ex Parte* Order Plaintiff did obtain on August 2, 2004, which expired no more than twenty days later, Plaintiff has made no effort until now (a mere three months before the two-year noncompete restriction ends on September 19, 2005, even if it were valid and enforceable, which Mr. Caron continues to deny). Mr. Caron has assured Plaintiff and this Court that he has not and will not use or disclose any confidential information belonging to Plaintiff, nor has he retained any of Plaintiff's property. It defies reason that even Plaintiff believes at this late date that it will suffer some immediate and irreparable harm if a preliminary injunction does not issue. *Packaging Indus. Group, Inc.*, 380 Mass.

4

at 621 ("[w]here the moving party has failed to demonstrate that denial of the injunction would create any substantial risk that it would suffer irreparable harm, the injunction must be denied, no matter how likely it may be that the moving party will prevail on the merits."). Certainly, if Cognex did believe that Mr. Caron's employment with Euresys posed a genuine threat of irreparable harm, it would have been more expedient in seeking injunctive relief.

**B.     PLAINTIFF HAS FAILED TO PROVIDE AFFIDAVITS TO ADEQUATELY SUPPORT ITS REQUEST FOR INJUNCTIVE RELIEF.**

Even assuming, *arguendo*, that Massachusetts law applies,[2] an application for a preliminary injunction must be based on evidence that would be admissible at trial, such as that made on personal knowledge in an affidavit or verified complaint. Fed. R. Civ. P. 65(a)(2). In its unverified Complaint, Plaintiff merely claims "*upon information and belief*" that Mr. Caron has breached the English Agreement by accepting employment with Euresys, using or disclosing confidential information belonging to Cognex, competing with Cognex, and soliciting Cognex customers. Unverified Complaint at ¶ 20. The affidavits supporting Plaintiff's Application offer no factual support for these assertions. Plaintiff's Application at Tabs A and B. The Court should reject Plaintiff's Application for this independent and adequate reason.

---

[2]     Cognex's assertion that Massachusetts law applies to the English Agreement *presupposes* that the English Agreement and its choice of law provision are enforceable. *See Bushkin Assocs., Inc.* v. *Raytheon Co.*, 393 Mass. 622 (1985); Restatement (Second) of Conflict of Laws §§ 188(2) and 6(2). The laws of France, where the English Agreement allegedly was made and to be performed, and where Mr. Caron and his employer were domiciled, restrict the use of post-employment restrictions, invalidate choice of jurisdiction clauses, and require that an employment agreement must be in French, if the duties are to be performed in France, in order to be enforceable. *See* French labor code, Articles L.121-1(2) and 121-3; Judgment of July 10, 2002, Cass. Civ. Soc. [2002] Bull. Civ. V.

5

### C. PLAINTIFF HAS SHOWN NO LIKELIHOOD OF SUCCESS ON THE MERITS.

Even if Plaintiff had not delayed unreasonably and assuming, *arguendo*, that the English Agreement is enforceable and Cognex had supported its assertions with admissible evidence, a post-employment noncompetition covenant is enforceable only as long as it is (1) necessary to protect a legitimate business interest, (2) reasonable in geographic scope and duration, and (3) consistent with the public interest. *All Stainless, Inc. v. Colby*, 364 Mass. 773, 778 (1974); *Novelty Bias Binding Co.* v. *Shevrin*, 342 Mass. 714, 716 (1961). A restrictive covenant that protects an employer from ordinary competition, however, does not serve a legitimate business interest. *Richmond Bros, Inc.* v. *Westinghouse Bdcst. Co., Inc.*, 357 Mass. 106, 111 (1970); *Marine Contractors*, 365 Mass. at 287-88. Further, contracts drafted by employers to limit the employment prospects of former employees -- even those at a very high level -- must be construed narrowly against the employer. *Sentry Ins. Co.* v. *Firnstein*, 14 Mass. App. Ct. 706, 707 (1982).

First, Plaintiff admits that "[t]he particulars of [Cognex's] technology and products provided are integrated in a field that develops rapidly." Plaintiff has made no showing that a two year post-employment restriction is necessary to protect any allegedly confidential information. Moreover, Plaintiff does not and cannot point to anything whatsoever to suggest that in the nearly two years since Mr. Caron left Cognex International's employ, Mr. Caron has used or disclosed any protectable information. Plaintiff merely claims in its unverified Complaint that "*upon information and belief*" Mr. Caron has used or disclosed confidential information belonging to Cognex. Unverified Complaint at ¶ 20. These unsupported and conclusory assertions are

insufficient to show that the noncompetition covenant is necessary to protect any confidential or trade secret information. *Safety-Kleen Sys*. v. *McGinn*, 233 F. Supp. 2d 121, 124 (D. Mass., 2002) ("Massachusetts law provides no basis for an injunction without a showing of actual disclosure").

Further, to the extent that Plaintiff seeks to protect any goodwill that Mr. Caron may have developed on its behalf, any such goodwill necessarily is limited to the customers with which Mr. Caron worked during his employment with Cognex International. *Oxford Global Res., Inc*. v. *Guerriero*, 2003 U.S. Dist. LEXIS 23503, *22-23 (D. Mass. 2003). Plaintiff alleges that Euresys is a "formidable competitor of Cognex within the Southern European Region" and specifically is a competitor for business at Iemeca and Compar in Switzerland (with which Euresys had preexisting relationships, as Plaintiff appears to concede) and Europlacer in France. Plaintiff's Application at Tab A, Affidavit of Didier Lacroix at ¶ 19. However, Plaintiff's allegation that Mr. Caron has been in contact on behalf of his new employer with Cognex customers is made merely upon *information and belief*, unsupported by affidavit. Unverified Complaint at ¶ 18-19. Plaintiff does not and cannot aver that Mr. Caron worked with these customers when he was employed by Cognex International. Therefore, the noncompetition covenant is not necessary to protect any goodwill belonging to Plaintiff, or any other any legitimate business interest.

**III.    Conclusion.**

For the foregoing reasons, because Plaintiff cannot show that it will suffer any significant risk of irreparable harm absent an injunction or that it is substantially likely to

succeed on the merits of its claims, Jean Caron requests that the Court deny plaintiff

Cognex Corporation's Plaintiff's Application for Preliminary Injunction.

>	Respectfully submitted,
>	JEAN CARON
>	By his Attorney(s),
>
>
>	     /s/   Sally L. Adams
>	Sally L. Adams (BBO # 629688)
>	SEYFARTH SHAW LLP
>	World Trade Center East
>	Two Seaport Lane, Suite 300
>	Boston, MA 02210-2028
>	Telephone:    (617) 946-4800
>	Telecopier:   (617) 946-4801

DATED:  June 21, 2005