# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COGNEX CORPORATION,<br>        Plaintiff,<br><br>v.<br><br>JEAN CARON,<br>        Defendant. | )<br>)<br>)<br>)    CIVIL ACTION NO. 04 12365 JLT<br>)<br>)<br>)<br>) |

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO APPLICATION FOR PRELIMINARY INJUNCTION

Plaintiff, Cognex Corporation ["Cognex"], respectfully submits this reply to Defendant's, Jean Caron's ["Caron"], Opposition to Cognex's Application for Preliminary Injunction ["Opposition"]. This reply is necessitated by Caron's distortion of the facts, meritless accusations of "delay", intentional failure to provide an accurate timeline, and utter failure to address the substantive merits of Cognex's Application for Preliminary Injunction ["Application"].

### THE ACTUAL TIMELINE

Cognex commenced this action in the Middlesex Superior Court ["Superior Court"] on August 2, 2004 and immediately obtained a Temporary Restraining Order ["TRO"].[1] Contrary

---

[1] Caron places inordinate emphasis on the fact that the action was filed on August 2, 2004, rather than sometime in May 2004 when Cognex first learned that Caron was employed by Euresys (a direct competitor of Cognex). This purported "delay" is a red herring. Notably, Cognex did not find, nor did Caron cite, even one case -- in any jurisdiction -- that has held that three months constitutes an unreasonable delay. Indeed, there are cases where the courts have held that four years was not an unreasonable delay. See E.g. Members of Bridgeport Housing Authority Police Force v. City of Bridgeport, 646 F.2d 55, 63 (2nd Cir. 1981). The case law makes clear that there is "no certain period of time within which a plaintiff may reasonably delay before filing suit; that reasonable period varies upon the circumstances of each case." Clarke v. Volpe, 342 F. Supp. 1324, 1328 (E.D. La. 1972). Cognex typically performs some preliminary investigation prior to filing a Complaint, seeking an injunction and securing affidavits in support thereof. See Affidavit of Ulrich Starigk, attached hereto and incorporated herein as Exhibit A. Here, Cognex conducted an investigation, assembled evidence in both the U.S. and overseas during summer vacation months, commenced this action, and obtained an restraining order -- all in less than three months. Based on the circumstances of this case, Cognex acted reasonably and promptly.

to Caron's assertion, the Superior Court found that Cognex was likely to succeed on the merits, and would suffer irreparable harm if the injunction were denied – otherwise the Court could not, and would not, have issued the TRO. See Mass.R.Civ.P. 65(a). The Superior Court was not required to expressly state its findings in the written order. See Mass.R.Civ.P. 65(d). Thus, the fact that there were no express findings is irrelevant. Furthermore, the TRO substantially complies with the requirements of Federal Rule 65 (despite the fact that it was entered by a state court), in that the injunction is "specific in terms", and describes in "reasonable detail" the precise conduct from which Caron is restrained. See Fed.R.Civ.P. 65(d). Copies of the original TRO, dated August 2, 2004, and the extension, dated August 11, 2004, are attached hereto as Exhibit B and C, respectively.

The facts as presented by Caron in his Opposition tellingly fail to mention the following relevant facts: (1) Caron evaded service of the Superior Court pleadings for more than two months (from August 2, 2004 through October 8, 2004) requiring the extension of the original TRO in order to effectuate service under the Hague Convention; (2) Caron had actual knowledge of the Superior Court hearing on Cognex's Application for Preliminary Injunction ["Application"] scheduled for November 18, 2004; and, (3) Caron removed this case a mere week prior to the Preliminary Injunction hearing. This was not a coincidence. Moreover, neither party was ever under the impression that the injunction had "expired" (as Caron's counsel now claims in her Opposition).[2]

---

[2] Under Massachusetts law, extensions beyond 20 days are permissible as long as the extensions are for a "reasonable time." See Childs v. Sherman, 351 Mass. 450, 456 (two year extension of restraining order deemed reasonable). Here, the Superior Court properly extended the Temporary Restraining Order until a hearing could be conducted on Cognex's Application. See Samuels Pharmacy, Inc. v. Board of Registration in Pharmacy, 390 Mass. 583, 585-586 (1983) (Superior Court issued a temporary restraining order which was "extended indefinitely, until further order of the court"); Norton Co. v. Hess, 14 Mass. L. Rep. 162 at 1-2 (Mass. Sup. Ct. 2001) (ex parte temporary restraining order obtained by employer against former employee to enforce a non-compete agreement was extended by the court for two months until the date of the hearing).

2

Caron also fails to mention that, after removal, he filed a Motion to Dismiss based, in part, on the grounds that this Court lacked personal jurisdiction. This Court denied Caron's Motion to Dismiss on January 3, 2005 – the same date on which Cognex's Motion to Remand was also decided.[3] On January 14, 2005, less than ten days after this Court determined that jurisdiction was proper and, correspondingly, declined to remand this matter to the Superior Court, Cognex promptly filed a Motion to Show Cause and for Order of Civil Contempt ["Contempt"] based on Caron's repeated and continuous violation of the injunction originally entered by the Superior Court.[4] This Court denied Cognex's Contempt on May 10, 2005 on the basis that the Superior Court TRO had expired. However, at the hearing on May 9, 2005, the Court indicated that it was inclined to advance the trial and would entertain an application for preliminary injunction submitted by Cognex. Shortly thereafter, Cognex filed and served its Application. Cognex has also filed a Motion to Advance the Trial and Consolidate the Preliminary Injunction Hearing with the Trial on Merits ["Motion to Advance and Consolidate"] pursuant to Rule 65(a)(2), which is currently pending before this court.

At no point has Cognex impermissibly or unreasonably "delayed", or otherwise failed to take all action permissible under the law to protect itself against Caron's blatant disregard not only of his written contractual obligations with Cognex, but of court orders as well.[5]

---

[3] There can be no dispute that, if this case had been remanded, the Superior Court would have commenced where it had left off – at the Preliminary Injunction hearing.

[4] In support of its Contempt, Cognex relied on the express language of 28 U.S.C. §1450 (which provides that all injunctions "shall remain in full force and effect until dissolved or modified by this court") and clear precedent stating that a temporary restraining order that extends beyond the 20-day period provided for under Rule 65(b) must be treated as a preliminary injunction. See E.g. Melanson v. John J. Duane Co., 605 F.2d 31, 33 (1st Cir. 1979).

[5] Caron continues to deny this Court's legitimate exercise of personal jurisdiction, and inappropriately relies on French and Belgian law – rather than Massachusetts law – in an attempt to circumvent his contractual obligations with Cognex, and disregard this Court's authority. Caron's conduct makes clear that he will not be bound by the laws or rules of this Commonwealth, or the orders of its courts. As recently as this past Tuesday (June 28, 2005), Caron failed to appear for his properly noticed deposition. Caron did not request or obtain a Protective Order, nor was any scheduling issue ever addressed with counsel. Caron simply failed and refused to appear for his deposition, giving notice, through counsel, the day before his scheduled deposition that he would not be appearing.

## THE "CERTIFICAT DU TRAVAIL"

This is yet another red herring. Caron again mistranslates, misinterprets, and misstates the language and purpose of the "Certificat du Travail" ["Certificat"]. The Certificat is issued to all employees as a matter of course at the end of their employment in accordance with French law. See Exhibit A. The Certificat typically lists the employee's name, the employee's function/duties, and the duration of employment with a particular employer. Id. The Certificat does not permit Caron to leave his employment with Cognex "free of all duties and obligations" as Caron purports.[6] According to French law, the Certificat is not to be interpreted as a waiver of all obligations and/or a release of all claims by either the employer or employee. Id. Rather, the Certificat is intended simply to document that the employee is no longer employed with a particular employer. Id. By issuing the Certificat to Caron, Cognex did not in any way release Caron from his obligations to Cognex under either the French or English employment agreements. Caron remains bound by the terms of the two employment agreements, including but not limited to, the provision prohibiting him from working with a direct competitor of Cognex, and the provision restraining him from divulging Cognex's confidential information. The Certificat is a simple document with a simple purpose and a simple meaning. This Court must reject Caron's thinly-veiled attempt to contort this document into something it is not.

## IRREPARABLE HARM

As explained above, there is no basis for Caron's assertion that Cognex unreasonably delayed, or that the Certificat somehow relieves him of his duties and obligations to Cognex. Further, any purported "assurance" from Caron that he will not use or divulge Cognex's confidential information to his current employer is hollow, and provides insufficient protection

---

[6] The correct translation is actually that Caron "leaves us [Cognex] today free of any engagement" -- meaning only that he is leaving Cognex's employment. Id.

4

to Cognex. Caron has already repeatedly breached his obligations to Cognex by remaining continuously employed for a direct competitor since he left Cognex's employ.[7] "Whenever an employee uses his experience gained from an employer in violation of a reasonable covenant not to compete, irreparable injury occurs and injunctive relief is appropriate." Lucas-Insertco Pharmaceutical Printing Co., v. Salzano, 124 F. Supp. 2d 27, 31 (D.P.R. 2000) (quotations omitted); see also Basicomputer Corp. v. Scott, 973 F.2d 507, 511-512 (6th Cir. 1992) (use of confidential information to compete constitutes irreparable harm because injury not fully compensable by money damages). Accordingly, Caron's employment with Euresys, and inevitable disclosure of Cognex's confidential information to Euresys constitutes irreparable harm, and provides an adequate basis upon which this court may grant an injunction. See Id.

## LIKELIHOOD OF SUCCESS ON THE MERITS

In order to fulfill this prong of the test, Cognex must set forth sufficient evidence to exhibit a likelihood of success on the merits. See Planned Parenthood League of Massachusetts v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981). Cognex is not, however, required to prove an absolute certainty of success.

Caron specifically agreed, in writing, to certain post-employment restrictions. These restrictions are reasonable, and appropriately limited in time, geographic area, and nature of competitive activity.[8] Despite his express written agreement, Caron has been continuously

---

[7] As stated more fully in the pleadings previously filed with the Superior Court which were expressly incorporated into Cognex's Application, injunctive relief is appropriate in cases involving violations of contractual restrictions or the use of proprietary information to the detriment of a former employer, or more generally, in cases involving violations of covenants not to compete. See, e.g., Shipley Company, LLC v. Kozlowski, 926 F.Supp. 28 (D.Mass. 1996); Marine Contractors Co. v. Hurley, 365 Mass. 280 (1974); Novelty Bias Binding Co. v. Shevrin, 342 Mass. 714 (1961); Veridiem, Inc. V. Phelan, 17 Mass. L. Rep. 8 (2003).

[8] In fact, Massachusetts courts has previously enforced the specific restrictive covenants set forth in the exact same agreement signed by Caron. See Cognex Corporation v. Andrea Rossi, Middlesex Superior Court Docket No. 02-03010, (injunction entered against Defendant, Rossi [a resident of Italy], in connection with his breach of the comparable standard form Cognex Employee Agreement); Cognex Corporation v. Pierdomenico Chiesa, Middlesex Superior Court Docket No. 02-0422 (same); Cognex Corporation v. Hans Hermann Bibel and Holger Hofmann, Middlesex Superior Court Docket No. 99-1739, (injunction entered against Defendants, citizens of Germany, for violations of standard form Cognex Employee Agreement).

employed with a direct competitor of Cognex for nearly two (2) years, and has engaged in unlawful and unfair competition.[9] Caron has certainly utilized the detailed and comprehensive training received from Cognex, together with proprietary and confidential information, in his employment with Euresys in violation of his contractual obligations -- all to Cognex's present and continuing detriment. In its various pleadings, Cognex has set forth sufficient evidence to exhibit a likelihood of success on the merits. Cognex has clearly met its burden in this regard.

## CONCLUSION

For the reasons set forth herein, as well as in Cognex's related pleadings previously filed, a preliminary injunction is appropriate and warranted under the facts of this case.

>Plaintiff,
>**COGNEX CORPORATION**,
>By its attorneys,
>
>/s/ James E. O'Connell, Jr.
>James E. O'Connell, Jr., BBO# 376475
>Jennifer A. Yelen, BBO# 565205
>PERKINS SMITH & COHEN LLP
>One Beacon Street
>Boston, Massachusetts 02108
>(617) 854-4000

Dated: July 1, 2005
13271-11 Reply.doc

---

[9] In support of Caron's contention that Cognex is not likely to succeed on the merits, Caron's counsel claims that the non-competition provision of the agreement will expire in a few short months in September 2005. This is incorrect. The agreement expressly provides that "in the event of any violation of any provision of this Agreement, the Non-Compete Period [of two years] shall be extended for a period of time equal to the period of time which the Employee is in violation." A copy of the relevant portion of the agreement is attached hereto as Exhibit D.