UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COGNEX CORPORATION,<br>　　　　Plaintiff, | )<br>)<br>) |
| v. | )　　CIVIL ACTION NO. 04 12365 JLT |
| | )<br>) |
| JEAN CARON,<br>　　　　Defendant. | )<br>)<br>) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO SHOW CAUSE AND FOR ORDER OF CIVIL CONTEMPT**

The Plaintiff, Cognex Corporation ("Cognex"), submits this Memorandum in support of its request that this Court find the Defendant, Jean Caron ("Defendant"), in contempt for his admitted, willful and continued violations of a now-Permanent Injunction and Default Judgment entered in the above-referenced action which expressly prohibits Defendant from, inter alia, engaging in or accepting employment with any business competitive with Cognex, including but not limited to Euresys, S.A. ("Euresys"). Euresys is a direct competitor of Cognex for which Defendant has remained continuously employed from through the present date.

**STATEMENT OF RELEVANT FACTS**

Since its incorporation in Massachusetts in 1981, Cognex, along with its subsidiaries, divisions, and branches, has been engaged in the business of providing leading-edge machine vision technology to customers throughout the United States and the world.

In March 1998, Defendant entered into an agreement with Cognex (the "Employee Agreement"), incident to his employment as a Vision Solutions Engineer with Cognex International, Inc., a wholly-owned subsidiary of Cognex with a branch office in Paris, France. The Employee Agreement contains a provision prohibiting Defendant for a two-year period after

the termination of his employment with Cognex from becoming involved with or employed by businesses in competition with Cognex. The Employee Agreement states that upon any violation of this non-compete provision, expiration of the two-year period is automatically tolled for the duration of the violation. The Employee Agreement further restricts Defendant from soliciting Cognex employees to leave Cognex's employ, and from using or divulging confidential and proprietary information entrusted to him by Cognex. A true and accurate copy of the Employee Agreement is attached hereto and incorporated herein as Exhibit "A."

After executing the Employee Agreement, Defendant was provided with access to effectively all of Cognex's existing programs. Defendant attended at least two intense training sessions conducted at the Cognex headquarters in Natick, Massachusetts, and had significant, regular contact with Cognex employees in Natick. Defendant received a high degree of supervision and support from Cognex executive and management personnel in Massachusetts, as well as comprehensive detailed information regarding Cognex's product, technology, customers, business methods and practices. In addition, he had access to confidential materials pertaining to the business of Cognex, its key technology, product development, its customers, business methods, pricing, and marketing strategy.

Defendant terminated his employment with Cognex on or about June 16, 2003, effective September 19, 2003. See Affidavit of Jean Caron dated November 5, 2004 ("Caron Aff.") at ¶ 25.[1] On October 1, 2003, Defendant became employed by Euresys. Caron Aff. at ¶¶ 30, 31. Euresys is a Belgian machine vision company, and a direct competitor of Cognex, particularly in

---

[1] Caron's November 5, 2004 Affidavit was filed with the Court on November 16, 2004.

Switzerland and France. Defendant is employed as a Technical Services Manager with regard to machine vision engineering and products at Euresys, a position with substantially the same duties and responsibilities as the position he held with Cognex. Caron Aff. at ¶ 31; Affidavit of Ulrich Starigk dated November 21, 2005 ["Starigk Aff."] at ¶ 3.[2]

Cognex's and Euresys' businesses overlap in that both companies market to original equipment manufacturers ("OEM's") and system integrators. Both Cognex and Euresys have recently competed for business at Ismeca and Compar in Switzerland and at Europlacer in France.

Beginning in October 2003, and continuing to the present date, Caron has violated and continues to violate the express covenants in his Employee Agreement by:

(i) accepting and continuing his employment with Euresys following his employment with Cognex;

(ii) divulging, appropriating and using for his own personal gain confidential information obtained during the course of his employment with Cognex, including information pertaining to Cognex's trade secrets, technology, new product development, training and sales methods, customer lists and information, pricing and marketing practices;

(iii) competing with Cognex in the territory designated in the Employee Agreement; and

(iv) soliciting customers of Cognex for the purpose and with the effect of diverting such customers from Cognex to Euresys.

Starigk Aff. at ¶¶ 3, 7, 8.

Cognex has confirmed Defendant's continued employment at Euresys by, <u>inter alia</u>, contacting Defendant at Euresys' offices, most recently in mid-November 2005. As of that date, Caron remained employed by Euresys. Starigk Aff. at ¶¶ 3, 7, 8.

---

[2] The November 21, 2005 Affidavit of Ulrich Starigk has been filed with the Court contemporaneously with the instant Motion to Show Cause and for Order of Civil Contempt, and is incorporated herein by reference.

3

## RELEVANT PROCEDURAL HISTORY

In sum, the key procedural steps in this matter are as follows:[3]

Cognex commenced an action against Defendant in Middlesex (MA) Superior Court ("Middlesex Superior Court") on August 2, 2004, seeking injunctive relief against Defendant to enforce the restrictive covenants contained in the Employee Agreement. On that date, Cognex obtained a Temporary Restraining Order against Defendant, restraining and enjoining him from, inter alia, employment by any company in direct competition with Cognex, and particularly from employment with Euresys, S.A. (the "Temporary Restraining Order").

With adequate notice to Defendant and no opposition from him, the Temporary Restraining Order was subsequently extended, on August 11, 2004 and again on October 25, 2004, until such time as a hearing could be conducted on Cognex's Application for Preliminary Injunction. Said hearing was scheduled by the Middlesex Superior Court for November 16, 2004. However, that hearing never occurred. Rather, on November 8, 2004, Defendant filed a Notice of Removal, which placed this matter upon this Court's docket.

After a period of time devoted to unsuccessful motions to dismiss – Defendant moved to dismiss this action on personal jurisdiction grounds, and Cognex challenged the propriety of the removal of this action – Cognex renewed its Application for Preliminary Injunction by filing for same in this Court pursuant to Fed. R. Civ. P. 65 on June 15, 2005.

At no time, either prior to or after the removal of this action, did Defendant answer Cognex's Complaint in this matter. On July 7, 2005 – having received no answer from Defendant after the passage of more than seven (7) weeks since the denial of Defendant's motion

---

[3] A detailed statement of the procedural history of the injunction and default judgment that are in place in this matter can be found in Plaintiff's Memorandum Of Law In Support Of Its Motion To Show Cause And For Order Of Civil Contempt (dated January 14, 2005), which was previously filed with this Court.

for reconsideration of his motion to dismiss, and after Defendant failed to appear for his June 28, 2005 deposition – Cognex applied for entry of a default pursuant to Fed. R. Civ. P. 55(a).

As of August 31, 2005, eight (8) weeks after Cognex had applied for entry of a default and served a copy of said application upon Defendant, Defendant had failed to file and serve its answer. For that reason, Cognex filed and served its Motion For Entry of Default Judgment on August 31, 2005. Defendant filed nothing in response to this motion.

On September 13, 2005, pursuant to Fed. R. Civ. P. 55(b), this Court entered a default judgment against Defendant (the "Default Judgment"). The Court adopted the proposed judgment that Cognex submitted with its Motion For Default Judgment. In pertinent part, the Default Judgment makes permanent the terms of the preliminary injunction, stating:

> It is hereby ORDERED, ADJUDGED AND DECREED that Defendant and all persons in active concert or participating with him who receive actual notice of this Order, are hereby restrained and enjoined from: (1) engaging in or accepting employment with any business competitive with Plaintiff, including but not limited to Euresys S.A., in violation of his contract with Plaintiff, and from soliciting any customers of Plaintiff; (2) divulging, appropriating, or using to his own gain any confidential information obtained from Plaintiff; (3) violating in any manner the agreement between the Plaintiff and Defendant; and (4) retaining any proprietary technology and equipment and confidential information belonging to Plaintiff.

Default Judgment at 1, third paragraph (capitals in original).

As set forth in Starigk Affidavit, Caron has received actual notice of the Default Judgment and the incorporated permanent injunction. Starigk Aff. at ¶¶ 5, 6. Despite receipt of such notice, Caron remains employed by Euresys, in direct violation of the permanent injunction and Judgment of this Court. Starigk Aff. at ¶¶ 3, 5, 7, 8.

## ARGUMENT

I. **Defendant's Flagrant Violations Of The Default Judgment Warrants Entry Of A Contempt Order, Including Sanctions For Defendant's Willful Noncompliance**

"The power to punish for contempt is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently, to the due administration of justice." Bessette v. W.B. Conkey Co., 194 U.S. 324, 327 (1904) (quotations omitted). "Civil contempt proceedings are for the purpose of coercing compliance with the orders of the court . . . . [C]oercion may be achieved by imprisonment of the contemnor until he purges himself of the contempt and/or by a prospective, conditional fine." United States v. Professional Air Traffic Controllers Organization, 678 F.2d 1, 4 (1st Cir. 1982) (citations omitted).

It is well-established that the fact that Defendant filed a motion to dismiss in which he questioned this Court's jurisdiction over this proceeding does not relieve him of the obligation to comply with the Default Judgment. When a defendant makes a "private determination of the law" by presuming the court does not have jurisdiction, he acts at his own peril, and any "disobedience is punishable as contempt." U.S. v. United Mine Workers of America, 330 U.S. 258, 293 (1947).

A finding of contempt is appropriate under the facts of this case. Defendant has flagrantly, willfully and repeatedly violated the present Default Judgment. His present actions constitute a distinct pattern: the extant non-compliance was preceded by a similar lack of regard for the initial state-court Temporary Restraining Order. By his own admission, Defendant has remained employed with Euresys, a direct Cognex competitor. Moreover, since Defendant has

6

done the very opposite of tailoring his actions to minimize any damaging effect of working with Euresys, Defendant should also be held in contempt for:

(i) competing with Cognex in the territory designated in the Employee Agreement; and

(ii) soliciting customers of Cognex for the purpose and with the effect of diverting such customers from Cognex to Euresys.

Defendant's abject refusal to abide by the specific terms of his Employee Agreement and the Default Judgment shows a blatant disregard for authority, and warrants a finding of contempt, an award of sanctions – including but not limited to a fine of $1,000.00 per day until such time as Defendant complies with the terms of the Default Judgment – and an award of reasonable costs and attorneys' fees incurred by Cognex in connection with the contempt proceeding. This is a just and reasonable result designed to secure Defendant's compliance with this Court's Default Judgment. See Goya Foods, Inc. v. Wallack Management Co., 290 F.3d 63, 75-80 (1st Cir. 2002) (district court acted within its discretion when it imposed a sanction of $4.6 million for civil contempt on the purchaser of an apartment building, the cooperative housing association, and the apartment building's managing agent for a surreptitious sale in violation of the court's order); see also Dystar Corp. v. Canto, 1 F. Supp. 2d 48, 58-60 (D.Mass. 1997) (award of attorneys' fees proper in a civil contempt proceeding against dye distribution firm for its willful violation of court's preliminary injunction).

## CONCLUSION

For the reasons stated herein, Plaintiff, Cognex Corporation's, Motion to Show Cause and For Order of Civil Contempt should be allowed, and the relief requested therein granted.

                Plaintiff,
                COGNEX CORPORATION,
                By its attorneys,


                /s/ James E. O'Connell, Jr.
                James E. O'Connell, Jr., BBO#376475
                Jennifer A. Yelen, BBO#565205
                Eric R. Barber-Mingo, BBO#564031
                SHILEPSKY O'CONNELL CASEY
                HARTLEY MICHON YELEN LLP
                225 Franklin Street, 16th Floor
                Boston, MA 02110-2898
                (617) 723-8000

Dated: December 28, 2005